TODD et al. v. BEMIS.

(Court of Civil Appeals of Texas. Texarkana. May 27, 1913. Rehearing Denied June 5, 1913.)

1. MORTGAGES (§ 334*) — DEED OF TRUST — FORECLOSURE — TRUSTEES — AUTHORITY TO SELL.

A deed of trust to secure a debt provided that, in case of default, the trustee was fully authorized and empowered, and it was "made his special duty" at the request of T., the beneficiary, made at any time after the maturity of the debt, to sell the described premises for cash, etc. *Held*, that though such provision be construed as requiring, not only the maturity of the debt, but the request of the creditor, to confer legal authority on the trustee to sell, the creditor having requested the trustee to sell, his failure to promptly execute the power which was prevented by the wrongful suing out of an injunction which compelled him to suspend the proceedings until long after the date specified in the original notice of sale and after the death of the credtior did not deprive him of the power to sell the land under the original authority on the dissolution of the injunction, and it was immaterial that, after the creditor's death, a new request was made by his heirs.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1017, 1018; Dec. Dig. § 334.*]

2. MORTGAGES (§ 358*)—TRUST DEED—FORECLOSURE—SALE IN PARCELS.

Where a trustee under a deed to secure a debt had power on the debtor's death to sell all of the property, a sale of a portion thereof was not objectionable because he did not sell it all.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1072, 1073; Dec. Dig. § 358.*]

3. MORTGAGES (§ 345*)—FORECLOSURE—DEED OF TRUST—POWER OF SALE—TIME.

Where a trustee's sale on foreclosure of a deed of trust under authority conveyed by the creditor was suspended by injunction pro-

ceedings, the trustee's failure to sell on the first day available for that purpose after the dissolution of the injunction did not affect the continued existence of the power of sale, which, having once been conferred, remained until executed.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1043; Dec. Dig. § 345.*]

4. MORTGAGES (§ 346*)—TRUST DEED—FORE-CLOSURE — SALE — REQUEST BY OWNER OF DEED.

Where a deed of trust provided that, on default, the trustee was authorized, and it was made his special duty, at the request of the beneficiary at any time after the maturity of the debt to sell the premises, etc., the deed did not confine the request to the person named in the deed as beneficiary, but extended as well to the person who succeeded him as owner of the debt on the beneficiary's death before fore-closure.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1044; Dec. Dig. § 346.*]

Appeal from District Court, Cass County; P. A. Turner, Judge.

Action by George T. Todd and others against H. C. Bemis. Judgment for defendant, and plaintiffs appeal. Affirmed.

O'Neal & Allday, of Atlanta, F. H. Prendergast, of Marshall, and Chas. S. Todd, of Texarkana, for appellants. Glass, Estes, King & Burford, of Texarkana, for appellee.

HODGES, J. On May 26, 1887, J. T. Smith executed a note for $2,500 payable to E. W. Taylor on November 1st thereafter. In order to secure that note, he gave a deed of trust on certain real estate described as being situated in Marion and Cass counties. W. T. Armistead was named as trustee. The deed of trust contained the usual stipulations common to such instruments, authorizing the lands to be sold in default of the payment of the note, and providing for the appointment of a substitute trustee in case of the failure or refusal of Armistead to act. Smith defaulted in the payment of the note at maturity, and Taylor, being under the impression that Armistead had refused to execute the trust, appointed R. R. Taylor as substitute trustee. R. R. Taylor advertised the property, and sold it on April 2, 1889, to W. T. Connery. Connery took the title in behalf of E. W. Taylor, who was his father-in-law. Taylor afterwards sold the property to J. M. Bemis, who remained in its undisturbed possession from the date of his purchase until December, 1900. In June of 1889, after the execution of the original trust deed, and after the sale by the substitute trustee and the deed executed by him had been recorded in Cass county, J. T. Smith sold the land to W. J. Williams. Williams subsequently died, and W. T. Williams was appointed his executor. The executor and the heirs at law of W. J. Williams thereupon instituted a suit against Bemis, and recovered a judgment awarding them the land which had been sold by R. R. Taylor as substitute

trustee. This case is reported in Bemis v. Williams, 32 Tex. Civ. App. 393, 74 S. W. 332. It appears that the judgment rendered in favor of the plaintiffs in that suit was predicated upon the holding that Armistead, the original trustee, had not refused to execute the trust, and that the appointment of a substitute trustee and a sale by him were void and conveyed no title. Soon after the final decision of that suit E. W. Taylor again requested Armistead, the original trustee, to execute the trust and sell the land. In compliance with that request, Armistead, in the manner provided in the deed of trust, advertised the land for sale at Jefferson, Marion county, on the first Tuesday in July, 1903. After the notices of sale were posted, W. T. Williams, the executor of the estate of W. J. Williams, and other parties representing the same interest, now represented by the plaintiffs in this suit, instituted injunction proceedings in the district court of Marion county against Taylor and Armistead, and secured a temporary order restraining them from selling the land. A general demurrer to the petition was sustained by the district court on final hearing, and the suit dismissed. On appeal to the Court of Civil Appeals the judgment of the trial court was reversed, and the cause remanded. The case was again tried, and the temporary injunction theretofore granted was perpetuated. On appeal to the Court of Civil Appeals this judgment was affirmed. See Taylor v. Williams, 105 S. W. 837. A writ of error was granted by the Supreme Court, and the judgments of the Court of Civil Appeals and the district court were reversed and the cause dismissed. Taylor v. Williams, 101 Tex. 388, 108 S. W. 815. After this final decision by the Supreme Court, which was rendered on the 8th day of April, 1908, Armistead again advertised the land, and designated June 2, 1908, as the date of the sale, and on that date that portion of the land which was situated in Cass county, and which is the land involved in this suit, was sold under the terms of the trust deed, and purchased by H. C. Bemis, the appellee herein. The trustee executed to Bemis a deed in all things regular upon its face. In December, 1908, this suit was instituted by Geo. T. Todd and others, consisting of the heirs and purchasers holding under W. J. Williams, against Bemis for the recovery of the Cass county lands sold at that time. The case was tried before the court without a jury and a judgment rendered in favor of Bemis, from which this appeal is prosecuted.

It is conceded that J. T. Smith is the common source, and that the appellee holds by a superior title, unless the sale made by Armistead in June, 1908, is void. It appears from the testimony that, after Taylor requested Armistead to proceed to execute the trust and sell the land according to the terms of

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

the trust deed, he died pending the litigation that followed; that after determination of that litigation and the rendition of the final judgment in the Supreme Court in April, 1908, Armistead was requested by the attorney representing the heirs of Taylor, and all those who claimed any interest under the original trust deed, to proceed with the execution of the trust and sell the land. The main ground relied on for reversing the judgment appealed from is the lack of authority in Armistead as trustee to sell the land at the time he did. It is claimed that the sale was void because the land was not advertised and sold in accordance with the request of E. W. Taylor made before his death. We quote the following from the written argument filed by counsel for appellants as a concise statement of appellants' contention: "It was perhaps possible, after Taylor's death, to have sold under his request made while alive, and have passed title; but this could have been done only by the trustee proceeding, immediately after the final dissolution of the injunction and removal of the legal restraint, *to complete the sale which had been enjoined.* The final dissolution of the injunction occurred on *April 8, 1908,* upon the overruling by the Supreme Court of the motion for rehearing in the injunction suit. If the trustee had immediately thereafter *advertised the same sale,* and have sold on the first Tuesday of the next following month, *May, 1908,* it is possible, and it may be conceded in this argument, that such sale would have been effective to pass title. There was ample time for him to have completed that interrupted sale on the first Tuesday of the next following month; but when that day passed the sale which Taylor had requested and authorized could not be completed; and no living person had power or authority to request or authorize a new sale. It may not be strictly correct to say that the power of the trustee to sell was revoked by the death of Taylor; but such death rendered it impossible for the trustee to exercise that power in accordance with the requirements of the trust deed."

[1] The facts being undisputed, the question of law is: Did Armistead have authority to make the sale he did? In order to determine that question, we must look to the deed of trust from which he derived his authority. That instrument contains this provision: "But in case of the failure or default in the payment of said promissory note, together with the interest accrued and attorney's fees, according to its terms and face at the maturity of the same, then in such an event the said W. T. Armistead is by these presents fully authorized and empowered, and it is made his special duty, at the request of said E. W. Taylor, at any time made after the maturity of said promissory note, to sell the above-described premises and tracts and lots of land to the highest bidder for cash in hand at the courthouse door in Jefferson, Marion county, Texas," etc. Construing that language as requiring, not only default in the payment of the debt at maturity as essential to confer authority upon the trustee to make the sale, but also a request from Taylor that he proceed with the execution of the trust, we think the trust deed was properly and legally executed. It is not disputed that in 1903, prior to Taylor's death, full authority had been conferred upon Armistead to sell under the terms of the deed of trust. His failure to promptly execute the power was prevented by the appellants in wrongfully suing out the writ of injunction, which compelled him to suspend proceedings till long after the date specified in the original notice and after the death of Taylor. It is not contended that these conditions operated to deprive Armistead of the power with which he had once been invested. But it is clamed that he failed to proceed under that particular power and in accordance with the particular terms of the request made by Taylor. If Armistead upon the request of Taylor had the power to sell the land, and did sell it in accordance with the terms of the trust deed, his act is valid, regardless of the fact that others having no authority to do so joined in the request that he execute the power. The record does not justify the conclusion that Armistead acted solely at the request of the heirs of Taylor and without reference to the previous request made by Taylor himself before his death. On the contrary, according to the evidence and the recitals in the notices of sale, Armistead in making the sale he did was continuing the execution of the original authority arising from the request made by Taylor.

[2] It is insisted that because he failed to sell all of the land described in the trust deed, and failed to make the sale on the first available day after the final judgment dissolving the writ of injunction, he failed to sell in accordance with the terms of the request made by Taylor. That request seems to have been general in its nature—that Armistead proceed to execute the trust in accordance with the terms of the mortgage. Presumably this implied that Armistead should sell all of the land described in the deed. If Armistead had power to sell all, manifestly he had power to sell a portion, and it was not necessary that he sell all in order to convey a valid title to a part only. The deed under which he acted did not prescribe any unusual conditions or terms for him to observe in making the sale. A sale of only a portion would manifestly be a benefit to the mortgagee to the extent at least of that which was unsold, and is something of which he should not be heard to complain in the absence of a showing that he had sustained some special injury by reason of that method of procedure.

[3] The failure to sell on the first day

available for that purpose after the dissolution of the writ of injunction does not affect the continued existence of the power of sale. That having once been conferred upon Armistead remained until it was executed.

[4] While we think this judgment should be affirmed because the evidence shows that Armistead acted regularly at the request of Taylor in the execution of the trust, we are inclined to think he might have proceeded under the terms of the instrument at the request of the owner of the claim secured by the trust deed after, the death of Taylor. As supporting their contention that a request from Taylor was necessary, appellants cite the case of Boone v. Miller, 86 Tex. 80, 23 S. W. 574. In that case there was a contest between Boone, who claimed certain real estate under an execution sale, and Miller, who claimed the same property under a sale by a trustee foreclosing a lien. Reiger, the debtor had executed a deed of trust upon the land there in controversy to secure a debt he owed to J. N. Upton. The trust deed having been executed and recorded before the execution creditor acquired any lien upon the land, the purchaser at the trustee's sale made thereafter took a good title if the trustee's sale was valid. In discussing the questions involved the court said: "The deed of trust provides that the sale may be made 'at the request of J. N. Upton, made at any time after the maturity of the note.' The last sale was made at the request of W. J. Miller, and the question is: Had the trustee the power to sell at his request? The power of sale in a deed of trust is an important power granted by the maker, and he has the right to place upon it such limitations and conditions as he may deem proper for his own protection. When the exercise of a power is made to depend upon the direction or request of a given person, then the direction or request of that person must be given in order to authorize the exercise of the power. 18 Amer. & Eng. Enc. Law, p. 977, par. 13; Richardson v. Crooker, 7 Gray (Mass.) 190; Haymond v. Jones, 74 Va. 317. Looking to the transcript, we find copied into the statement of facts that portion of the deed of trust which confers the power to sell, with quotation marks, indicating that it is literally copied. There is no provision for the sale to be made at the request of the holder of note, which is common in such instruments, and the fact that such provision is omitted goes far to strengthen the conclusion that the purpose was to confide the authority to put the power of sale into active operation to Upton alone. It may be that Reiger was willing to trust to Upton, believing that he would not direct the sale under improper circumstances; but, no matter what the reason may have been, Reiger had the right to impose the limitation, and the court has no power to disregard it." It

will be observed that this decision rested upon the peculiar language of the trust deed, which seems to have made the power of the trustee to sell the mortgaged property at any time depend solely upon a request to do so by Upton. In the case now under consideration the language of the trust deed is quite· different. In view of the fact that promissory notes may be assigned at any time, and that the trust deed with its power of sale is manifestly intended to secure not only the original payee, but any subsequent holder of the debt secured, there is little reason for placing upon the trust a limitation which will practically defeat the power of sale after transfer, unless the terms of the instrument can bear no other reasonable construction. Here in the event of default of payment at maturity the trustee is "by these presents fully authorized and empowered, and it is his special duty," etc., to execute the trust. From this it would seem that full power of sale is given by the terms of the instrument itself upon the happening of the contingency mentioned—default in payment —and it is made his special duty to perform that service when requested so to do by Taylor. If that be a correct construction of the language creating the power of sale, it is immaterial whether Armistead proceeded under the request of Taylor or that of the holders of the debt alone. But, as before said, it is not necessary to base our conclusion as to the correctness of the judgment upon the latter proposition. We think the facts justified the judgment of the court, if it should be held that Armistead had power to act only in the event he had been requested so to do by Taylor.

The judgment of the district court is affirmed.