STAMPS v. EZELL. (No. 730.)

(Court of Civil Appeals of Texas. Amarillo. Feb. 20, 1915. On Motion for Rehearing, March 13, 1915.)

MORTGAGES ⊜⟹372—AUCTION SALE—PROPERTY PASSING—CROPS—SEVERANCE.

The purchaser of land at auction sale by the trustee under a deed of trust cannot claim that thereby he became the purchaser of the growing crop, he being informed, and at his request the trustee announcing, at the sale, that the crop had been sold, and would not pass to the purchaser of the land, and that bids should be made accordingly, the purchaser thus then agreeing to the severance, though at the same time he stated that if he bought the land he would claim the crop.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1102, 1103, 1105–1117; Dec. Dig. ⊜⟹372.]

---

⊜⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from Scurry County Court; C. R. Buchanan, Judge.

Action by C. L. Ezell against W. H. Stamps. Payment for plaintiff, and defendant appeals. Reversed and rendered.

Higgins & Hamilton, of Snyder, for appellant. Rosser & Boyd, of Snyder, for appellee.

HUFF, C. J. This is a controversy over the rents of a certain tract of land for the year 1913, situated in Mitchell county. The tenants having paid the rents into the court, the sum of which is $193.40, the controversy, therefore, on this appeal, is between appellant W. H. Stamps and appellee C. L. Ezell, as to whom it should be paid. Appellee instituted suit therefor in the justice court, and, from a judgment in his favor, the case was brought to the county court. A judgment was there rendered again for appellee, decreeing the money to him and the appellant appeals therefrom to this court.

The facts are sufficient to show, when appellee purchased the land in question at trustee's sale, the crop out of which the rents were paid was standing in the field and ungathered. The appellee contends that this crop was part of the land, and that the deed to him passed the title and vested in him the crop then standing. The appellant claims he bought the growing crop before the sale under the trust deed and paid for it. On the 20th day of February, 1912, the McCullough Hardware Company, a corporation, through its president, W. A. McCullough, executed the deed of trust on the land in question, together with some other land, to W. M. Robinson, as trustee, to secure the indebtedness due certain creditors of the corporation, amounting to $28,691.45. The deed of trust gave power of sale to Robinson, and also provided for the appointment of a substitute trustee under certain conditions to the creditors. The power of substitution appears to have been properly exercised, and George W. Sanford was appointed substitute trustee, and he, as such, on the 4th day of November, 1913, sold the land to appellee at public sale; he being the highest and best bidder therefor.

It is an undisputed fact that the substitute trustee expressly announced at the sale that the standing crop had theretofore been sold, and that the purchaser of the land would not get it, and that the bids should be made with a view to that fact. The appellee was personally informed before the sale of such fact, and he himself requested that the trustee announce such fact be so made at the sale, but at the same time stated if he bought the land he would claim the crop rent. George W. Sanford, the substitute trustee, sold the standing crop to appellant for $100 before the land was sold to appellee. This $100 was turned over to W. M. Robinson, the trustee of all the McCullough Hardware Company's property, both personal and real, and by him applied on the company's debts. W. A. McCullough testified, and his testimony is not controverted, that he purchased all the stock of the corporation and owned all the stock when he executed the deed of trust to Robinson, and turned over the company's property to him. He stated it was his desire that the crops be sold and the proceeds applied to the debts of the corporation. At the time he executed the deed of trust on the land to Robinson, he also delivered all the personal property of the corporation to him. He says he understood that Robinson, as such, had possession of the land, and that he (McCullough) rented it in 1912 as the agent of Robinson; that he had not collected or claimed the rents as his own for the reason that there was some question about his right thereto and his attorney having advised him that he was not entitled to them. The substitute trustee, Sanford, claimed to be acting for Robinson with all the power and authority held by Robinson, which acts he says were approved and ratified by the creditors of the McCullough Hardware Company.

There is some evidence in the record that the creditors, or a part of them, met at Dallas and agreed to accept the trust under Robinson and to release the corporation, if as much as 50 per cent. of the indebtedness was realized from its properties. The evidence is sufficient to show that McCullough ratified the sale of the growing crop to appellant by Sanford, and, after it was made, the money so received was placed to the credit of W. M. Robinson, who distributed it and paid it on the debts of the corporation. The jury found that W. A. McCullough bought up all the stock of the McCullough Hardware Company and was sole owner thereof on the 20th day of February, 1912, and at that time McCullough was the only stockholder and director in the hardware company; that the appellant Stamps did not make the rental contract with Ditto, the tenant for 1913, for W. A. McCullough; that he (Stamps) did collect part of the rent before the trustee's sale of the land to Ezell, and held the same subject to the order of W. M. Robinson, trustee, and afterwards paid the same to the trustee for the creditors; that he paid $100 for the unsold rents to the trustee for the benefit of the creditors. They found that the substitute trustee informed the bidders at the public sale that he was only selling the land, and that the rents had been previously sold; that Ezell was informed before he bought that the rents had been sold to Stamps, and that the crop, the rents of which are in controversy, was on the land and in the field where grown at the time Ezell purchased the land. The facts in this case further show that on the 20th day of February, 1912, and up until September 2, 1913, Stamps, the appellant, was in the employment of W. M. Rob-

174 S.W.—60

inson, as trustee, and assisted in making rental contracts, collecting rents, debts, etc., of the McCullough Hardware Company, and that up to November 3, 1913, he turned over all rents to Robinson, the trustee. We think the evidence amply supports the jury's finding that Stamps did not make a rental contract for McCullough, but that he was acting for the trustee.

The appellee contends that the sale by the substitute trustee, under the deed of trust of the standing crop, was void, and therefore Stamps got no title thereto. As we gather from the facts and the findings of the jury, he did not purport to sell the crop by virtue of the power expressed in the deed, but he sold the same as personal property and as the representative of Robinson, the trustee of the entire estate, real and personal, of the McCullough Hardware Company, for the benefit of its creditors. If he sold the crop, it was not a void sale. The land had been rented for the year 1913 by the trustee Robinson, or by his direction. The rents of the land was under his control and Sanford was acting for the trustee in the sale of the crops. It is not shown by the evidence that he exceeded his authority in such sale, but, on the contrary, there is every evidence that his acts were ratified by the trustee Robinson, who got the money therefor and distributed it to the creditors, who accepted it without objection, in so far as this record shows. McCullough, as president of the corporation, the original mortgagor, ratified it and approved the sale. There is not an interested party in the rents who objected. Ezell now claims the sale was not properly made. He bought the land with the understanding that the crops had been previously sold with the express notice, publicly made, and made to him individually, that the crops would not pass by the sale, and that they had been previously sold to Stamps. True, he claimed, as a question of law, it would be sold, but at the sale he requested that the substitute trustee inform the public that the crop had theretofore been sold. We do not think he is in a position to now say he bought the crop. The trustee, through his substitute, in law, constructively severed the crops from the land, and having done so, and Ezell having purchased the land after such severance, with full notice thereof, he should not now be heard to say it was not so severed.

It is not disputed that McCullough, as president of the company, gave to Robinson, the trustee, the right to sell the crop, and that he gave him the right to rent and apply the rents on the debts of the company. If his acts were ultra vires, as claimed by appellee, which they were not, Ezell could not set them up in order to get what he did not purchase and had no right to or defeat a bona fide purchaser out of what he bought and paid for. If the rents are not appellant's, and they could be recovered by the corporation, or the creditors, certainly they are not Ezell's, and he has shown no right thereto. Crops growing upon land are held to be personal property, so far as not to be considered an interest in land under the statute of frauds. Cook v. Steel, 42 Tex. 53; Hardeman v. State, 16 Tex. App. 1, 49 Am. Rep. 821. Crops, whether growing or standing in the field ready to be harvested, are, when produced by annual cultivation, no part of the realty;—they are liable to voluntary transfer as chattels and may be seized and sold under execution. Willis v. Moore, 59 Tex. 628, on pages 637, 638, 46 Am. Rep. 284. The trustee came into actual possession of the land to rent and apply the proceeds thereon on the debts of the corporation by the authority of McCullough is an undisputed fact in this record. McCullough was president of the corporation. In the absence of evidence to the contrary, it will be presumed he had authority to turn over the land to the trustee. Certainly there is as much authority shown for his doing so as there was shown to execute the deed of trust under which appellee claims; but it is not necessary to resort to the holding above to sustain appellant's rights. It is an uncontroverted fact, and so found by the jury, that McCullough was the sole and only stockholder at the time the trustee took charge of the properties. This being so, he was the sole owner of the land in equity and could deal with it as his own, having proper regard for the rights of the creditors of the corporation. Aransas Pass, etc., v. Manning, 94 Tex. 558, 63 S. W. 627. In order to make the transfer, there was no order of the board of directors necessary, and certainly it was his duty to pay the corporate debts. Ezell cannot complain that he appropriated the rents from the land to that end before he purchased the land at the sale. He, we think, is in no position to complain at the act of the trustee or McCullough in this particular.

We believe the court was in error in rendering judgment for appellee. The judgment will be here reversed and rendered for appellant, and that the money paid into the court by the tenants, as rent on the land, will be ordered to be paid to the appellant, and that appellee take nothing by this suit and pay all costs of the proceedings, etc.

Reversed and rendered.

## On Motion for Rehearing.

The appellee in the case earnestly insists that we were in error in the original opinion. He says the trial court did not believe McCullough. The trial court was not selected to pass on the credibility of the witness. A jury was chosen for that purpose, and they found in accordance with McCullough's testimony. The trial court disregarded their findings and, notwithstanding their verdict, rendered judgment according to his views. The only power he had was to set aside the verdict and grant a new trial. We repeat

that there is no contradiction of McCullough's evidence that all the property of the corporation was turned over to the trustee. His letters to Ditto, if in fact admissible against the trustee, and his mortgage to Stamps of the crop, do not necessarily contradict him. The facts and the letters themselves show that he was making the claim on the advice of some attorney. We take it that this was given on the ground that he could not dispose of the corporation property. Stamps swears that he worked for Robinson, the trustee, from February 20, 1912, to September 3, 1913, and that he was not working for McCullough or the hardware company, except in working for the trustee. He swears that he rented the land for the years 1912 and 1913, and that he turned over the crop to McCullough for 1912 and to the trustee for the year 1913. He says he was working for the trustee during this time, who was paying him for his services. Whether McCullough took, claimed, or demanded the rent, it was not his to handle. He says that Robinson, as trustee, had possession of all this land and the personal property of the corporation. After he turned it over to the trustee, the agent for the trustee rented it, and the rent was a trust fund, and it makes no difference what McCullough did afterwards in regard to it. His acts will not defeat the beneficiaries.

Again, it makes no difference to Ezell whether the personal property was turned over to the trustee under a written instrument or verbal. The crops growing on the land purchased were the trustee's for the benefit of the creditors. Our Supreme Court has expressly held, in the authority cited by appellee, that growing or standing crops produced by annual cultivation are no part of the realty and are liable to voluntary transfer as chattels and may be seized and sold under execution. Ezell, under his theory, would be as much entitled to Ditto's (the tenant's) portion of the crop growing on the place as he was to the interest belonging to the trustee. Whether the substitute trustee, at the time he made the sale, was acting properly, is a matter Ezell had nothing to do with. The creditors are not complaining; the trustee is not objecting; and McCullough is not protesting either for himself or his corporation. Everybody appears to be satisfied, except Ezell, who paid nothing for the crop, and, lest he might have to do so, he had the substitute trustee at the sale to announce that the crops would not be sold. He himself severed or agreed to the severance of the crop from the land at the time of the sale; but now, simply because he said if he bought the land he would claim the crop, he claims he purchased it. This did not make a purchase of the crop. He cannot blow both hot and cold. When he agreed to a severance at the sale of the land, he will not be heard to contend there was no severance made for the first time after he bought only the land.

The motion for rehearing will be overruled.