## HUGH COOPER CO. v. AMERICAN NAT. EXCHANGE BANK OF DALLAS.

### No. 10623.

Court of Civil Appeals of Texas. Dallas.
June 13, 1930.

Rehearing Denied July 19, 1930.

Turner, Rodgers & Winn, of Dallas, for appellant.

Coke & Coke and Thos. G. Murnane, all of Dallas, for appellee.

VAUGHAN, J.

Appellant, Hugh Cooper Company, a limited copartnership composed of Hugh Cooper and F. E. Simms, on May 23, 1928, filed a suit, hereinafter referred to as cause No. 74298–C, against W. H. Worden and Bert C. Henry, individually and as partners, composing the copartnership of Worden-Henry Company, and the Standard Building & Investment Company, a private corporation, as defendants, on a contract providing for the payment of $2,340, and for the foreclosure of a ·chattel mortgage lien alleged to exist in favor of appellant on certain frigidaire equipment stored at 2007 South Ervay street, in the city and county of Dallas, to· secure the payment of said sum, and. interest thereon. On December 13, 1928, judgment was rendered in said ·cause in favor of appellant for the sum of $2,713.40 against the Standard Building & Investment Company, and foreclosing said chattel mortgage lien as to all of the defendants to said suit on the following described property: 3 model N compressors, Nos. 171611, 123835, 123583, 18 model No. 4 two tray coils.

On February 15, 1929, appellee bank filed in said cause No. 74298–C what is termed a petition of intervention to enjoin appellant and Louis Brown, constable of precinct No. 1, Dallas county, from selling on February 16, 1929, under an order of sale, the above-described property, in satisfaction of the judgment rendered in said cause, and for the establishment of the lien asserted by it on said frigidaire equipment as paramount and superior to any right, claim, or lien asserted by appellant thereon. On February 15, 1929, appellee bank presented its said petition of intervention to Hon. T. A. Work, judge of the Forty-Eighth judicial district court of Texas, for and obtained a temporary writ of injunction enjoining appellant and said constable

from selling said equipment under said order of sale.

On May 22, 1929, appellant filed what is styled a supplemental petition in answer to appellee bank's plea of intervention, containing, among other pleas, a general denial, a special plea (a) that "the mechanic's lien contract referred to in the original petition called intervention filed herein by the American Exchange National Bank was not foreclosed by the American Exchange National Bank prior to the time these defendants delivered actual notice to its officers, agents, servants, employees and attorneys, and was not foreclosed by the American Exchange National Bank prior to the time these defendants filed the original of Exhibit 'A,' in the Chattel Mortgage or Realty Records of Dallas County, Texas, and is not now foreclosed, and has never been foreclosed by the "American Exchange National Bank, and that up to the present time, the American Exchange National Bank is only a lien holder on the property described in their original petition in which is located the personal property of these defendants," and a special plea (b) that "the American Exchange National Bank, its officers, agents, servants, employees and attorneys, had actual notice of the contents of the contract styled Exhibit 'A' hereto attached, prior to the time suit was filed in this cause, and prior to the time of any foreclosure of any mechanic's lien, if any, that may have been had by the American Exchange National Bank," and by way of cross-action alleged that, under and by virtue of the acts and conduct on the part of appellee bank, in asserting its alleged superior claim to said frigidaire equipment and obtaining a writ of injunction enjoining the sale thereof under the order of sale issued to enforce the collection of the judgment rendered in appellant's favor in said cause No. 74298–C, that appellee bank had converted said frigidaire equipment to its own use and benefit and had become liable to pay appellant, by virtue of said conversion, the value of said equipment, to wit $2,500.

On May 25, 1929, a trial was had before the court, without intervention of a jury, which resulted in the temporary writ of injunction being made permanent and the lien asserted by appellee bank on said frigidaire equipment to be paramount and superior to any rights, liens, or claims of appellant thereto; said judgment further decreed "that the judgment heretofore rendered herein on the 13th day of December, 1928 in favor of plaintiff, Hugh Cooper Company, and against Worden-Henry Company and Standard Building & Investment Company, shall be and it is hereby modified so as to provide that the rights and liens of plaintiff shall be subject and inferior to the rights and liens herein adjudged in favor of intervenor, the American Exchange National Bank of Dallas."

We will now consider what appears to be fundamental error, raised by appellant's special exception No. 3, viz.: "These defendants especially except to the intervenor's so-called petition for the reason that same is insufficient to constitute a legal intervention in any pending suit on the docket of this court in which an intervention might be entered as is patent from the face of said petition in that intervenors allege that judgment has already been taken in this cause, and for this reason the petition should be stricken out." Although this exception was not presented to and acted upon by the trial court, nevertheless same is presented to this court for review by the following assignment of error: "The court erred in awarding judgment in favor of intervenor, American Exchange National Bank of Dallas, and in holding that an intervention could be properly filed and maintained in a cause that had already been adjudicated and judgment become final therein," and appellee's proposition No. 5 based thereon: "Intervention is precluded after the original parties to a cause have determined the issues therein."

If the judgment rendered on December 13, 1928, was final, appellee bank's intervention was in contravention of the law as a plea of intervention provided for by article 1998, R. C. S. 1925, can only be filed in a cause undetermined on its merits, pending on the docket of a trial court. Was the judgment of date December 13, 1928, final, in that it determined all of the matters in controversy between the parties to said cause No. 74298–C without having adjudicated the asserted rights of appellee bank. The petition filed by appellant, as plaintiff, named as defendants thereto W. H. Worden and Bert C. Henry, individually and as copartners composing the copartnership of Worden-Henry Company, and the Standard Building & Investment Company, a private corporation, and alleged that on March 20, 1926, defendants, W. H. Worden and Bert C. Henry, individually and as partners composing the aforesaid copartnership, executed to appellant their written contract containing, among other things, the following: "Should there be any failure to pay any deferred payment when due, the entire unpaid balance shall become due and payable at once. That the purchaser assumes the risk of loss or damage to the said equipment after delivery. That the purchaser agrees to pay any and all public charges that may be assessed against the equipment after its purchase. That this order shall not be countermanded. That said seller does not relinquish his title to said equipment and that title shall not pass to the undersigned purchaser until the purchase price, whether represented by account, trade acceptance, note or other instrument or judgment, and all extensions and renewals for same is paid in full, and that until such pay

ment, such equipment shall be and remain the property of said seller. That this order is subject to acceptance by said seller and when so accepted constitutes a binding contract which covers all agreements express or implied between the undersigned purchaser and said seller. That this equipment shall remain chattel property."

And further alleged that they contracted to pay appellant the sum of $2,340 for said frigidaire equipment to be stored at 2007 South Ervay street in the city and county of Dallas; that said frigidaire equipment—consisting of one 3 model N compressor and 18 model 4 two tray coils—was installed in the property located at 2007 South Ervay street in the city and county of Dallas, state of Texas, and that said property is now in said building under the stipulation of said contract; and further alleged that appellant was the owner and holder of said contract and indebtedness evidenced thereby and the lien existing to secure the payment thereof; that said sum of $2,340, with legal interest, was due and unpaid; and, further, "that said property was installed by said defendants, W. H. Worden and Bert C. Henry, at 2007 South Ervay Street in an apartment building then and, as plaintiff now alleges on information and belief, owned by the defendant, Standard Building & Investment Corporation, and, in the alternative, plaintiff alleges that said Worden-Henry Company and its composing partners were the purchasing agents of said defendant, Standard Building & Investment Corporation, at the time of the purchase of the aforementioned property * * * that said written contract hereinbefore mentioned was filed for record in the chattel mortgage or Realty Records of Dallas County, Texas on the —— day of ——, 1927, and is now of record and of full force and effect."

Appellant prayed for judgment for the amount of the contract debt, interest, and all costs, together with foreclosure of the chattel mortgage lien upon said frigidaire equipment. On this petition, judgment, as above stated, was rendered in favor of appellant against the defendants therein named.

Appellee bank, in its petition of intervention, alleged the following facts material to a determination of the finality of the judgment of December 13, 1928, viz.: That prior to January 22, 1926 the Standard Building & Investment Company owned part of lot No. 2 block No. 898 in the city of Dallas, on which it desired to erect a three-story modern efficiency apartment, and to that end entered into a mechanic's lien contract of usual form with one R. Carnahan, as contractor, in part providing that Carnahan, "in consideration of the premises hereinafter set forth, agrees and contracts with the said parties of the first part to furnish all of the labor and material for and to construct, erect and complete

upon the lands and premises hereinafter described in a good workmanlike manner, and in accordance with the plans and specifications agreed upon between the parties and signed by them for the purpose of identification the following improvements"; and further providing, "in consideration of the construction of said improvements and furnishing the labor and materials therefor, as above stipulated, the parties of the first part agree to pay to party of the second part, his heirs and assigns, the sum of $190,000.00, in accordance with the terms of one certain promissory note due 90 days after date; said parties of the first part hereby give and grant unto the said party of the second part, his heirs and assigns, an express contract lien upon the land and premises and improvements to be erected thereon to secure the indebtedness evidenced by said note"; that said contract was recorded January 23, 1926, in the mechanic's lien records of Dallas county, Tex.; that Carnahan arranged with appellee to finance the performance of said contract by him, and to advance money necessary to erect the improvement; that on about January 21, 1926, he executed a written assignment of said mechanic's lien to appellee bank, which was duly recorded, with the contract, on January 23, 1926; that appellee advanced sums in excess of $100,000 to complete said improvements; that work was started some time prior to March 20, 1926, at which time all exterior work had been completed and the interior work was nearing completion; that on March 20, 1926, appellant sold to the firm of Worden-Henry Company the frigidaire equipment involved in the issues presented by appellee bank's plea of intervention; that on July 7, 1927, appellant filed for record in the chattel mortgage and realty records of Dallas county, Tex., the instrument alleged to be, and foreclosed on as, a chattel mortgage on the frigidaire equipment, involved in this litigation; that on May 3, 1926, appellant instituted said suit No. 74298-C, to which appellee bank was not made a party defendant, although appellant had notice of said appellee's lien, created and existing by virtue of said mechanic's lien contract.

From the allegations contained in appellant's petition, filed in said cause No. 74298-C, and in the plea of intervention filed by appellee bank, we have reached the conclusion that the cause of action alleged by said appellant in said cause No. 74298-C against the parties hereto did not in any respect involve, nor the judgment rendered therein operate on or against, any of the rights asserted by appellee bank, as same necessarily grew out of and were confined to said mechanic's lien and note secured thereby, duly executed and transferred to appellee bank prior to March 20, 1926, the date of the chattel mortgage foreclosed in said cause No. 74298-C; that said frigidaire equipment was not embraced within or intended to be a part of the im-

provements said Carnahan contracted to construct, or a part of the equipment contracted to be installed by him within and as a part of said improvements to be erected on said premises located at 2007 South Ervay street; and, further, that appellant did not claim in any respect adversely to the rights acquired by appellee bank under and by the transfer and assignment to it of said mechanic's lien and note, and that appellant's rights were independent of and disassociated with the legal rights created by said instruments.

The parties to said cause No. 74298–C were strangers to the instruments creating the rights asserted by appellee bank, and, likewise, appellee bank was a stranger to the instrument under which appellant's rights were asserted, and the property involved by said instruments, respectively, was other and different property. We therefore hold that said judgment of December 13, 1928, is final as between the parties to the litigation in which it was rendered, and that the rights asserted by appellee bank to said frigidaire equipment under said mechanic's lien contract were not involved in said suit or in any respect embarrassed by the rendition of the judgment therein.

■ There is another question suggested by said plea of intervention, viz.: It contains all of the essential elements of a bill of review. Therefore, said plea of intervention would be regarded as and given the effect of a bill of review if appellee bank was, as to said cause No. 74298–C, in position to invoke that means to have the judgment rendered therein reviewed.

■■ Appellee bank was not a party to said cause No. 74298–C, and therefore a bill of review was not available to it to procure the reversal, alteration, modification, or explanation of the judgment rendered on December 13, 1928, it being a procedure in the nature of a writ of error and having the same scope and purpose as a writ of error in an action at law. Bush v. United States (C. C.) 13 F. 625, 629; Hyman v. Smith, 10 W. Va. 298, 312; Longworth v. Sturges, 4 Ohio St. 690, 707.

■ Therefore, if said plea filed by appellee bank could only be recognized and given force and effect as a plea of intervention, or as a bill of review, we would of necessity have to sustain appellant's proposition and terminate this appeal, on the ground that said pleading did not furnish a basis for the judgment rendered in appellee bank's favor. This determination we do not think necessary under our liberal and sensible system of pleading. There existed prior to and at the time appellee bank filed said plea of intervention, the right to have instituted an independent suit to have adjudicated the claim in said plea asserted by it to said frigidaire equipment; appellant's answer thereto, and the proceedings had thereon by which the conclu-

sion appealed from was reached, were in every material respect, what would have been if appellee bank had instituted a new and independent cause of action to have the rights asserted by it against appellant established and enforced. Therefore, we have concluded that, under all of the circumstances, the trial court did not commit fundamental error in requiring appellant to litigate in the form presented, appellee bank's alleged cause of action, and will therefore review appellant's propositions based upon the proceedings had in the course of the trial and predicated upon said plea of intervention and appellant's answer thereto.

■ The mechanic's lien contract under which appellee bank asserted its alleged superior lien on the frigidaire equipment was acknowledged January 22, 1926, assigned by the contractor, R. Carnahan, to appellee bank January 21, 1926, and duly filed for record January 23, 1926. Appellant sold said equipment to Worden-Henry Company on March 20, 1926, which was installed during the months of March and April, 1926, in the improvements erected under said mechanic's lien contract on the premises at 2007 South Ervay street. The chattel mortgage executed by Worden-Henry Company to appellant on the frigidaire equipment was not forthwith filed for record, but actual notice of the lien created thereby was given to and had by appellee bank between February 1 and April 1, 1927. Said actual notice, under the facts of this case, we think was equivalent to and its effect the same as that implied by law from the due registration or recordation of such an instrument. Willis v. Munger, etc., Co., 13 Tex. Civ. App. 677, 36 S. W. 1010; Hampshire v. Greeves (Tex. Civ. App.) 130 S. W. 665, affirmed 104 Tex. 620, 143 S. W. 147; Murray Co. v. Jacksonboro, etc., Co. (Tex. Civ. App.) 205 S. W. 517. The actual notice of the existence and contents of said chattel mortgage so given to appellee bank certainly could be of no less effect than the notice presumed from the registration of a chattel mortgage, especially as appellee bank did not allege facts constituting grounds which would estop appellant from asserting the lien created by said chattel mortgage, as against the lien asserted by said appellee on said frigidaire equipment. Therefore, the failure of appellant to forthwith record said chattel mortgage had no bearing upon the rights of the parties as presented by their pleadings. Therefore, as the record stands, no good and sufficient reason is presented why appellant should be denied the right to assert and establish the true facts as same existed at the time appellee bank acquired the mechanic's lien and note secured thereby, the execution of the chattel mortgage to appellant to secure the payment of the purchase price of said frigidaire equipment, the filing of same for registration, and notice to

appellee bank of the existence of the lien created thereby.

■ Was the frigidaire equipment, and had it been originally, so attached to the apartment building that it could not be detached therefrom without causing material damage to said apartment, whereby appellee bank's lien became and was superior to appellant's lien, is presented for determination by appellant's second proposition.

On March 20, 1926, the disputed property was sold by appellants to Worden-Henry Company, the chattel mortgage hereinabove referred to being executed covering said property to secure the payment of its purchase price. One of the provisions of said instrument, which in fact constituted the contract of sale and created the chattel mortgage lien, is as follows: "That said seller does not relinquish its title to said equipment, and that title is not passed to the consigned purchaser until the purchase price is paid in full, and that until such payment such property shall be and remain the property of said seller; that this equipment shall remain chattel property."

That said equipment could be removed from the building in which it was installed without damage thereto was shown by the following testimony of H. Wolvertin, a witness for appellant, viz.: That he was the frigidaire service manager for appellant and had been so employed for about six years in the service department; that he was familiar with the frigidaire equipment installed on the property at 2007 South Ervay street; that he supervised the whole installation and was familiar with it; that said equipment "consists of three model N. compressors—HP, water cooled and 18 model 4 tray coils"; that the compressors were installed in the garage part and back of the building; that the compressors were not fastened in any way to any part of the building, were on top of a foundation and attached with rubber hose connections, there being no rigid connections whatsoever; that there were nine on each of the two floors situated in this apartment and kitchen cabinets; that said coils are only fastened by screws or by bolts and caps and could be easily detached; that the whole system between the compressor and coils in the service departments was connected by copper tubing running through the walls; that at the time said compressors were installed in the basement they were not bolted to the foundation on which they were placed, not being subject to much vibration; that they were set on 1-inch cork slabs without any rigid foundation; that such compressors are not ordinarily originally bolted on the frame on which they set; that the bolt holes on the frame are used only for shipping purposes; that the copper tubing from the compressors circle the walls and go into 1¼ to 1½ inch conduit, which is imbedded in the wall; that the whole system of tubing extends under and through the building to the second and third floors and branches to 18 separate apartments, and in each there is a refrigerator unit.

Said witness further testified that with two men he could remove all 18 coils and compressors in six hours and not injure the construction of the wood or ceilings or walls in either of the apartments; that in doing so he would use a screwdriver to loosen the screws that hold the support to the top of the cabinet and cut off the lines that extend into the cabinet and seal it with hydrolin which is used to seal all refrigerators; that the cabinets referred to were not put in by and formed no part of appellant's property; "that the hole, put in the back to run our line were not put in by our men, they were put in by the fellows who installed the cabinets"; that to remove the compressors it was only necessary to cut off all of the copper lines and disconnect the plumbing, cut the hose into on the drain; that to remove the whole job, all of the tools that would be necessary would be a screwdriver, a pair of pliers, a pipe wrench, and pocket knife.

As to the knowledge and experience of said witness with reference to installing and removing frigidaire equipment of the kind involved in this litigation, said witness testified: "I have installed quite a number of these systems in various apartments of this same type. Sometimes we install them while the work is going on of constructing the building and sometimes after the building is completed, because we have installed numerous jobs in old apartments where there is no construction going on whatsoever. It is not a fact that where we install these systems we consider them part of the completed building, because we can install them in old apartments just the same as we can in new ones. We do not consider them part of the completed building when we install them in a new building because we can pull them out any time the customer desires us to pull them out. I have installed these systems under plans and specifications calling for the running of the conduit, but I cannot recall any plans and specifications calling for installation of frigidaire because that generally comes under another contract from our office to the customer or any company building it."

■ The record is barren of any question of estoppel on account of the acts and conduct of appellant; likewise, the evidence does not in the slightest raise the question of appellee bank being a bona fide purchaser. Therefore, the reservation of title made by appellant to the frigidaire equipment (being personal property), in the agreement incorporated in the contract of sale, that same should remain personal property, controls the

rights of appellant, the vendor of said equipment, to remove same as against appellee bank, the incumbrancer of the realty, it not being established that the removal thereof would materially damage the realty. Therefore, the question of priority of liens is of no material import, the rights of the parties to this litigation not being in any respect dependent thereon.

The trial court found that the liens of appellee bank was superior to the chattel mortgage lien in favor of and asserted by appellant against the frigidaire equipment involved. This conclusion could only have been reached by the trial court finding as a matter of law that the frigidaire equipment became a fixture by reason of the fact that said equipment was so permanently attached to the realty that its removal could not be accomplished without materially injuring the apartment building in which it had been installed; for, unless said property had been so attached, the reservation of title and the agreement that said equipment should remain personal property would prevent same from becoming a fixture, and, as between the vendor and vendee and appellee bank's claim, under its mechanic's lien, remained personal property subject to appellant's chattel mortgage lien. Elk Mfg. Co. v. Citizens' National Bank, 18 S.W.(2d) 747 (Court of Civil Appeals at Eastland); Murray Co. v. Simmons (Tex. Com. App.) 229 S. W. 461; Willis et al. v. Munger Improved Cotton Machine Mfg. Co., 13 Tex. Civ. App. 677, 36 S. W. 1010; Van Valkenburgh v. Ford et al. 207 S. W. 405 (Court of Civil Appeals at Galveston); David v. Roe, 271 S. W. 196 (Court of Civil Appeals at Fort Worth); Tifft v. Horton, 53 N. Y. 377, 13 Am. Rep. 537; Mogul Producing & Refining Co. v. Southern Engine & Pump Co., 244 S. W. 212 (Beaumont Court of Civil Appeals).

Appellant's third proposition, viz.: "An assertion of complete dominion over property and title thereto, coupled with the use of means adequate to the retention of the same, as against the true owner of the property who has the right to immediate possession, constitutes a conversion of the said property," we do not think can be sustained. This because the uncontroverted evidence, comprehending the history of this litigation from the creation of the two liens involved and the filing of the plea of intervention by appellee bank established that said appellee, by its pleadings and proof, asserted a prima facie meritorious claim to the frigidaire equipment in good faith and in a lawful manner, and excluded the existence of an unlawful disregard of the legal rights of appellant, or that its claim was asserted contumaciously, in that appellee bank, in trying to establish and enforce its claim of right, was not guilty of any act merely to interfere with the rights claimed by appellant to said frigidaire

equipment, but only invoked in due and proper form the agencies of the law necessary to secure a judicial determination and pronouncement of and upon the controversy existing between appellant and appellee on account of the claims asserted by said litigants respectively. In this, appellee bank only exercised a constitutional right, as courts were created and are maintained to "establish justice" and "insure domestic tranquillity," two of the five major reasons assigned in the preamble to our federal Constitution for the establishment by the people of the United States of that most profound and comprehensive, enduring, and almost prophetic political creed. Therefore, to extend the rule of law, declaring what shall constitute a conversion of the property rights of another so as to make one liable for the value of such property, to the facts of this case would be but in effect penalizing appellee bank for having in an orderly and legal manner invoked a judicial determination of the controversy existing between it and appellant, and that without any intent to exercise any right over the frigidaire equipment than that which might be accorded to it through such ascertainment.

Therefore we hold that the acts of appellee bank complained of did not amount to a conversion of the frigidaire equipment, but only to the assertion of a property right through legal proceedings orderly instituted to have the respective claims of appellant and appellee bank to said equipment adjudicated. No injury to the property or impairment of appellant's rights thereto was shown further than was necessarily the natural result of the litigation, viz., the postponement of collecting the judgment caused by the writ of injunction issued on application of appellee bank, all damages resulting therefrom being secured by the injunction bond executed by appellee bank. This proposition is therefore overruled.

Appellant's fourth proposition, viz.: "Expert testimony is admissible only when the examining counsel has established the necessary predicate revealing the competency of a witness to express an opinion as an expert and the admission of an asserted expert testimony without such predicate revealed in the record is reversible error when such error is pointed out by opposing counsel through his bill of exception," challenges the ruling of the court in permitting Sam Turner and G. P. Dunlap, witnesses for appellee bank, to testify as expert witnesses, over proper objections, to their opinions in reference to whether or not said frigidaire equipment involved could be removed without material damage to the apartment building in which same had been installed, viz., Turner testified: "I am with the American Exchange National Bank (appellee herein). I have recent-

ly had occasion to visit the premises known as 2007 South Ervay Street, and I inspected the frigidaire equipment in those apartments. In my opinion, those refrigeration units cannot be removed from those apartments and the compressors from the basement without injury to the physical structure of the building." And Dunlap testified: "I am connected with Murphy & Bolanz Company and· am in the real estate business and have been in the real estate business about 23 years. I· am familiar with the premises known as 2007 South Ervay Street. * * * I have had occasion to inspect the refrigeration equipment in the building; I have had occasion to inspect similar equipment in other apartments. * * * I am called on frequently to make appraisals of values of real estate and particularly the improvements on real estate. * * * In my opinion, I don't think you. could remove the refrigerating unit from these apartments and the compressors without damage to that building."

Appellant objected to Turner's testimony, on the ground, that "it calls for an opinion of a witness not shown to be qualified to state whether or not the removal of said property would injure any part of the equipment building, and because it calls for a conclusion and would be purely hearsay and of no benefit to the court," and objected to Dunlap's testimony, on the ground that he "had not qualified as a builder or a man that tears down buildings, and not qualified to make such answer."

The questions propounded to said witnesses, Turner and Dunlap, called for their opinions in reference to the effect of removing a complicated mechanical device, and as to what would be the effect upon the building in which it was located, on being removed. Therefore, the answers of the witnesses thereto were only their opinions, and to be admissible as expert evidence it devolved upon appellee bank to have laid the proper predicate, viz., that said witnesses possessed such technical knowledge·of the construction and installation of the parts of said equipment, or equipment of a like kind, that they could foretell with reasonable certainty what would be the result of the physical acts and conduct necessary to disconnect and remove said frigidaire equipment from the apartment house in which same had been installed, and what might be expected to be the result as to injuring or not injuring said premises. In this respect, appellee bank signally failed, in that it was not established that either of said witnesses had any special knowledge of the matters in reference to which they were called upon to testify, or that they were educated as to the mechanical construction, operation, or installation of the machinery and equipment constituting a finished frigidaire unit and the effect that would be attendant upon said apartment by the removal of said equipment, whether or· not it would, from the standpoint of their superior knowledge, be attended with damage thereto.

Therefore the court erred in not sustaining said objections. F. W. & D. C. R. Co. v. Thompson, 2 Tex. Civ. App. 170, 21 S. W. 137; Meily v. St. L. & S. W. R. Co., 215 Mo. 567, 114 S. W. 1013; Bryan Press Co. v. Houston & T. C. Co. (Tex. Civ. App.) 110 S. W. 99; Dunn v. Land (Tex. Civ. App.) 193 S. W. 698; Chicago, R. I. & G. Ry. Co. v. Kapp (Tex. Civ.· App.) 117 S. W. 904.

 We are to presume that, as far as it was in the power of appellee bank to do so, it established the extent of the experience, training, and knowledge of said witnesses to show their qualifications to testify as experts in reference to the matter under investigation, and that such qualifications of said witnesses could not by further examination be shown.

It is therefore ordered that said judgment of the trial court be, and the same is hereby, reversed, and judgment is here rendered in favor of appellant, dissolving the temporary injunction granted therein; that appellee bank take nothing by its suit against appellant, and that all costs incurred in this court and ·in the court ·below be, and the same are hereby adjudged against appellee bank.

Reversed and rendered for appellant.