METALS DEVELOPMENT COMPANY, Inc., Appellant,

v.

UNITED STATES of America, Appellee.

No. 19841.

United States Court of Appeals Fifth Circuit.

Aug. 13, 1963.

Rehearing Denied Oct. 9, 1963.

William A. Brown, Houston, Tex., Carter, Stiernberg, Skaggs & Koppel, Harlingen, Tex., for appellant.

Robert C. Maley, Jr., Asst. U. S. Atty., Woodrow Seals, U. S. Atty., Houston, Tex., for appellee.

Before HUTCHESON, WISDOM and GEWIN, Circuit Judges.

GEWIN, Circuit Judge.

Metals Development Company, Inc.[1] appeals from that portion of the judgment of the U. S. District Court, Southern District of Texas, which denied recovery of the proceeds of sale of certain gin machinery on its counterclaim. The suit was originally instituted as an action by the United States for injunctive relief to prevent interference by Metals with entry of the public, the auctioneer, prospective bidders, and agents of the Small Business Administration,[2] upon certain real estate belonging to Metals, and purchased by it at a prior foreclosure sale hereinafter mentioned. Injunctive relief was granted, the auction held, and Metals was the successful bidder. In its counterclaim, Metals sought to recover approximately $80,000.00 paid pursuant to its bid at the auction for certain gin machinery which it asserts was included in the substitute trustee's deed conveying real estate to it at said prior foreclosure sale. The substantial claims of Metals were denied by the trial court, but it was allowed credit for an overcharge of $6,-200.00. Originally, the government appealed from the judgment making the award of the smaller amount, but by motion subsequently filed, the government's appeal was dismissed.

SBA loaned the Mongoose Gin Company $250,000.00, represented by an installment note secured by a deed of trust and two chattel mortgages. These instruments were recorded. There was default and the substitute trustee posted notices of sale, as provided by the deed of trust, to be held at 10:00 A.M. on November 7, 1961. Just before the sale began at 10:00 A.M., the substitute trustee announced that he was selling the land and buildings only and that this sale did not include any machinery or equipment "of any nature". Mr. Campbell, agent for Metals, was present at the sale and heard this announcement. He was high bidder for Metals at $30,000.00.

Later that same day, at 11:00 A.M., the property covered by the two chattel mortgages, namely, the gin equipment and other personalty, was sold. Mr. Campbell bid $95,500.00 on behalf of Metals, but was outbid by SBA. SBA then set up an auction sale for January 9, 1962, of the property it had purchased at the chattel mortgage foreclosure sale. The auction sale was to be held on the real property purchased by Metals at the earlier sale. Prior to the proposed auction, Metals made it known that it claimed title to most of the property purportedly bought by SBA, at the chattel mortgage foreclosure sale, claiming the property to be "fixtures" and appurtenances to the real estate already purchased by it.

After a full trial, the court ruled that Metals take nothing.[3] From this ruling, Metals appeals, contending that the sole ultimate issue for this court to decide is whether it bought the fixtures (gin machinery) at the foreclosure sale under the deed of trust, or whether SBA bought them at the chattel mortgage sale.

Metals specifies the following errors in the findings and holdings of the trial court: in not holding that all of the items of gin machinery in dispute were permanent fixtures and thus a part of the realty purchased by it; that the substitute trustee did not offer for sale and sell to Metals all of the property described in the Deed of Trust, the Notice of Sale,

1. Herein referred to as Metals.

2. Herein referred to as SBA.

3. The court ruled that Metals was entitled to a "refund in the amount of $6,200.-00," which the SBA charged it for a pair of truck scales on an "item by item" basis. The court found that Metals had purchased the scales in the purchase of the equipment by lot, and the individual charge was not justified.

and the sworn Memorandum of Sale; in admitting extrinsic documentary and parol evidence to vary the terms of sale from the terms set forth in the notice and memorandum; that the chattel mortgage on the gin machinery was valid, although not recorded as a Chattel Mortgage on Machinery Attached to Realty in compliance with Article 5498 VTCRS;[4] that it is lawful for a trustee under a trust deed to change the terms of the sale by oral announcement immediately prior to the time of sale; and that its agent Campbell heard and knew of such oral announcement at the time of the purchase of the realty.

Two basic questions must be decided by this court: (1) was the trial court correct in holding as a matter of law that the terms of sale under a trust deed can be changed by oral announcement by the trustee, prior to such sale, so as to be binding on the purchaser from the trustee in the circumstances of this case; and (2) was the trial court correct in finding as a matter of fact that Metals was aware of the purported change in the terms of sale at the time of its purchase at foreclosure and is therefore bound by such change? If such holdings are correct, all other substantial questions are eliminated. Without a detailed recitation of the record evidence, we are convinced that there was substantial evidence to support the conclusion of the trial court that Mr. Campbell, the bidding agent of Metals, heard and understood the announcement of the substitute trustee immediately before the 10:00 A.M. sale began, that only land and buildings would be sold and " * * * that there was no machinery or equipment of any nature included in the sale of the land and the buildings." Otherwise stated, the conclusion of the trial judge is not clearly erroneous.[5] Rule 52(a) F.R. Civ.P. After proving *actual notice* on the part of Metals that the machinery would not be sold, the United States is not bound to further prove *presumptive or constructive notice* by showing that the correct recording procedure for chattel mortgages was followed. Hugh Cooper Company v. American National Exchange Bank, 30 S.W.2d 364, (Tex.Civ. App.1930).[6]

We reject the contention of Metals that the substitute trustee could not validly exclude the machinery in question from the foreclosure sale under the deed of trust. The deed of trust under which the substitute trustee was acting provides: " * * * the said trustee, or his successor or substitute, may sell said mortgaged property either as a whole or in *lots or parcels* as may seem expedient * * * ". (emphasis added). It is further provided " * * * that should said trustee, his successor or substitute, *elect to sell said property in lots or parcels*

---

4. Vernon's Texas Civil Revised Statutes.

5. One hour after the sale of the realty, the same agent, Mr. Campbell, made an unsuccessful bid of $95,500.00 for the same machinery that Metals now contends was purchased with the land for the total sum of $30,000.00. At the trial, the land and buildings alone were valued by an appraiser at $32,000.00.

6. The deed of trust is dated May 18, 1959, and is recorded in Vol. 47, pp. 235–242 of the Deed of Trust records of Willacy County, Texas; a chattel mortgage was taken on the same date covering office equipment, rolling stock, trailers and similar items and was filed and recorded in Vol. 8, p. 251 of Chattel Mortgage records of the same County; and on May 22 a supplemental chattel mortgage covering the gin machinery in the buildings was taken, and that mortgage was filed and recorded in Vol. 8, p. 252 of the Chattel Mortgage records of the same County. The trial court concluded:

" * * * and that they were not in violation of Article 5498 of the Vernon's Texas Revised Civil Statutes, and that they were not put in the book entitled Chattel Mortgage Records on Realty for the reason that this machinery that was covered by this chattel mortgage of May 22, in particular, was not a chattel mortgage on machinery which was placed on the realty at the time of its location there, in other words, it wasn't located there for the first time, so the chattel mortgages were properly recorded and were notice to the public of what they contained."

*separately*, in any such event the effect and validity of this instrument shall remain in full force and effect as to the remaining unsold portion or portions of said property \* \* \* ". (emphasis added). The procedure here followed has the sanction of Texas law. Todd v. Bemis, 158 S.W. 182 (Tex.Civ.App. 1913); Stamps v. Ezell, 174 S.W. 944 (Tex.Civ.App.1915); Shaw v. Holloway, 13 Tex.Civ.App. 254, 35 S.W. 800 (1896).

■ Metals urgently insists that the court violated the parol evidence rule in permitting proof of the trustee's announcement that only the land and buildings, but not the gin machinery, would be sold at the initial sale. Thus Metals claims that such evidence varies the written notice of sale and the written "Memorandum of Sale" executed by the trustee in the form of an affidavit dated December 5, 1961, which latter instrument was executed approximately 29 days after the sale and after the SBA had purchased the machinery. Neither of these written instruments expressly excluded the machinery from the sale. The deed of the substitute trustee to Metals is dated November 9, 1961 (acknowledged December 18, 1961), and it contains the following provision:

> "This conveyance is strictly limited to the lands and buildings affixed thereto and does not grant to, nor vest in the grantee any title to any machinery or fixtures of any nature on or in said lands and buildings, whether attached thereto or not."

■ Metals recorded the deed from the substitute trustee on March 28, 1962, but claims that the deed has never been accepted by it and the court found that the deed had not been accepted. The court further found however, " \* \* \* that the Small Business Administration has done everything that it has to do in regard to the tendering of a deed by the trustee to the land and buildings which were sold on November 7, 1961, and that the same, as appears now here in the record is the deed which the defendant

can take or leave \* \* \* and the court finds that the deed itself covers everything that is necessary to be covered; that defendant cannot recover anything or have any right to have anything added to the said deed." We agree with the trial court. The evidence in this case, considering the issues involved, is rather voluminous and conflicting. There are numerous exhibits, including the deed of trust, the chattel mortgages, the notice of foreclosure sale, various memoranda, and the deed mentioned, in addition to oral testimony by witnesses all of whom were heard and observed by the trial court.

We cannot accept the narrow interpretation of the parol evidence rule proposed by Metals. Much of the testimony is in conflict and the contentions of the parties are irreconcilable; and some of the contentions of Metals are inconsistent with other of its contentions. It is difficult to understand, although we have given close attention to the explanations offered, how agent Campbell would offer $95,500.00 for personal property exclusive of the gin equipment in dispute, while at the same time claiming that its bid of $30,000.00 covered the buildings, land and gin equipment. An entire review of this record leads us to the conclusion that the position of the United States and its agency, the Small Business Administration, is just and correct, and that the trial court correctly decided the issues. As aptly pointed out by the trial court:

> " \* \* \* this Court is a Court of equity as well as of law, and the equities here lead to the conclusion that on the sale of November 7, 1961, at the court house door of Raymondville, Willacy County, Texas, that all that the Defendant bought for $30,-000.00 was the land and the buildings, excluding everything that was included in the chattel mortgages heretofore referred to."

The rule applicable here is cogently stated in United States v. Oregon State Medical

Society, 343 U.S. 326, 72 S.Ct. 690, 96 L.Ed. 978:

"The Government's contentions have been plausibly and earnestly argued, but the record does not leave us with any 'definite and firm conviction that a mistake has been committed.'"

The judgment is affirmed.