## E. W. Taylor v. W. T. Williams, Executor, et al.

### No. 1800.   Decided March 4, 1908.

**1.—Power of Sale—Death—Revocation—Independent Executor.**

The power given by a trust deed to sell land for debt, being coupled with an interest, is not revoked by death, but only suspended while its exercise would be inconsistent with the laws governing the administration of estates; and such suspension is not effected by administration under a will by an independent executor acting without control of the Probate Court in the presentation, allowance, classification and payment of claims against the estate. (Pp. 390–392.)

**2.—Same—Case Stated.**

S. conveyed land in trust to A., with power to sell to secure payment of his note to T.; he then sold the land to W., and afterwards died, the power remaining unaffected by his death after he had parted with his interest; W. died and his estate was administered by an independent executor under his will, for nine years, during which he had paid off the debts of the estate and partly distributed the proceeds to heirs; a sale of the land under the trust deed was made in the life-time of both S. and W., but the executor and heirs of W. had recovered it on the ground that the sale was by an unauthorized substitute trustee. Held, that the power of sale by A., the trustee, was neither revoked nor suspended by these facts, and that the executor and heirs of W. could not enjoin him from proceeding to sell the land under the terms of the trust deed. (Pp. 389–393.)

**3.—Same—Cases Discussed, Distinguished, Limited, etc.**

Swearingen v. Williams, 28 Texas Civ. App., 559, disapproved. Black v. Rockmore, 50 Texas, 88, limited and distinguished. Robertson v. Paul, 16 Texas, 472; Buchanan v. Monroe, 22 Texas, 537; Whitmire v. May, 96 Texas, 317; Rogers v. Watson, 81 Texas, 400; Roy v. Whitaker, 92 Texas, 346; Blair v. Thorpe, 33 Texas, 38; Reeves v. Petty, 44 Texas, 249; McLane v. Paschal, 47 Texas, 365; Abney v. Pope, 52 Texas, 288; Armstrong v. Moore, 59 Texas, 646, discussed. (Pp. 393, 394.)

Error to the Court of Civil Appeals for the Fifth District in an appeal from Marion County.

Williams and others sued to enjoin sale under a trust deed securing a note to Taylor on land claimed by plaintiffs. The injunction was made perpetual in the trial court; and this was affirmed on appeal by Taylor, who then obtained writ of error.

*John W. Wray,* for plaintiff in error.—The pendency of the independent administration presented no barrier at any time, under the

undisputed facts, to the foreclosure of the deed of trust, by the exercise of the power of sale. Roy v. Whitaker, 92 Texas, 347.

Williams, Sr., acquired from Smith only the equity of redemption to the lands in controversy. His death and appointment of the independent trustee to settle his estate neither revoked nor suspended the right on the part of plaintiff in error to require the exercise of the power of sale in his deed of trust. Fievel v. Zuber, 67 Texas, 278; Roy v. Whitaker, supra; Rogers v. Watson. 81 Texas, 400; Griffie v. Maxey, 58 Texas, 215.

*C. S. Todd, F. H. Prendergast* and *Geo. T. Todd,* for defendants in error.—No closure of the administration of the Williams estate is shown. The propriety and indeed necessity of its continuance is not denied by any evidence. The fact that the note was barred by limitations before the death of either Williams or Smith, is undisputed. The answer, or cross-action of appellant is a "proceeding in court to foreclose." Goldfrank v. Young, 64 Texas, 432; Fuller v. O'Neal, 82 Texas, 417.

Even if the administration of Williams' estate was closed, still the Rogers v. Watson case, nor any other within our knowledge, has ever held in Texas that a legal administration merely suspends, during its continuance, the power in a trust deed, and does not revoke and destroy it. The claim must be established [and there limitation will run] in the proper court. Rev. Stats., arts. 1996, 2001, 2005; Robertson v. Paul, 16 Texas, 472; Buchanan v. Monro, 22 Texas, 537; Whitmire v. May, 96 Texas, 318; Black v. Rockmore, 50 Texas, 88; Fuller v. O'Neal, 82 Texas, 417; Swearingen v. Williams, 28 Texas Civ. App., 559.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

The fundamental question in this case is whether or not the power of sale given in a deed of trust upon land executed by J. T. Smith for the benefit of plaintiff in error, to secure the payment of Smith's note, is still existent, or has been revoked by the death of W. J. Williams, to whom Smith conveyed the land, followed by independent administration upon Williams' estate. The action was brought June, 1903, by W. T. Williams, the executor of W. J. Williams, and Helen Smith, the heir of J. T. Smith, as plaintiffs, to enjoin a threatened sale of the property by Armistead as trustee in the exercise of the power. Both the District Court and the Court of Civil Appeals held the sale should be restrained on the ground that the power of sale was extinguished. (14 Ct. Rep., 381; 20 Ct. Rep., 108.)

The facts upon which the question depends may be thus stated. Smith executed the note and deed of trust in May, 1887, and conveyed the land to W. J. Williams on the first day of February, 1889. The note having matured November 1, 1887, Taylor, on April 2, 1889, caused the land to be sold under the trust deed by a substituted trustee and to be purchased for him by one Connery who held it in trust for Taylor. By an understanding between Taylor and Smith the latter, in March, 1890, arranged a sale of the land to

J. H. Bemis, Connery executing the conveyance. J. H. Bemis conveyed the land to J. M. Bemis in July, 1891. W. J. Williams died in March, 1894, and soon afterwards, during the same year, W. T. Williams qualified and has since acted as the executor of his will, freed from the control of the Probate Court. Smith died in 1897 and there has been no administration on his estate. In December, 1900, the executor brought suit against Bemis, Connery and Helen Smith, the widow and heir of Smith, to recover the land and succeeded on the ground that the sale by the substituted trustee was void, the original trustee, Armistead, having never declined to act. (Bemis v. Williams, 7 Texas Ct. Rep., 651.) After the decision just referred to was finally made, Taylor caused Armistead to advertise a sale of the land which was prevented by the injunction in this case. W. J. Williams left no widow or minor children surviving him. Within a year or two after his qualification, the executor paid all debts of the estate and it appears that no charges exist against it except, perhaps, taxes which may have accrued against the property in his hands. For many years past he has managed the property, consisting of lands and a few claims for money, under an understanding with the heirs, he being one of them, that he convert it into money and distribute it among those entitled. He has so distributed some money received for the estate.

Under the doctrine of Buchanan v. Monroe (22 Texas, 537), and Whitmore v. May (96 Texas, 317), the question is as to the effect upon the power of sale of the death of W. J. Williams and the administration on his estate. The property having passed from Smith his subsequent death did not affect the power. (See also Phillips v. Watkins, etc., Co., 90 Texas, 195.)

The two decisions first cited give to the death of a purchaser of property encumbered by a mortgage with power of sale the same effect that is given by the doctrine of Robertson v. Paul (16 Texas, 472), to the death of the mortgagor while still the owner of the mortgaged property. We must therefore see what that doctrine is and whether or not it controls this case. One of the propositions in Robertson v. Paul is that the power of sale, in such an instrument as is here in question, is coupled with an interest and, upon general principles, is not revoked by death. This proposition has been admitted in the subsequent opinions on the subject, and, in Rogers v. Watson (81 Texas, 400), legal effect was given to it by the holding that such a power could be enforced after the death of the mortgagor, when the time for an administration had elapsed and none had been opened. With the proposition thus established that there is no general rule of law by force of which death is made to extinguish the power, before a court can be justified in holding that it has been lost in a particular case as a consequence of death, it must find warrant for its judgment in the laws regulating the administration and settlement of estates.

In Robertson v. Paul, and other cases following it, such authority was found in the provisions of the probate law regulating the establishing, classifying and enforcing of claims for money in the course of regular administrations conducted under the control of

the Probate Court. Those provisions and the rule deduced from them are thus stated: "Repeated decisions have settled that a mortgage is a 'claim for money' within the meaning of the statute (art. 1156), which must be presented to the administrator for allowance, and to the chief justice for approval, before it can be enforced. (Graham v. Vining, 1 Texas, 639; Danzey v. Swinney, 7 Texas, 17; 11 id., 94; 12 id., 43.) The mortgage or other evidence of the debt secured by it must be presented, 'accompanied by an affidavit in writing that the claim is just, and that all legal offsets, payments and credits known to the affiant have been allowed,' before it can be allowed by the administrator or approved by the chief justice (art. 1158); and it must be allowed and approved before payment can be required, or legally made by the administrator, otherwise than upon his own personal responsibility, in case there should not be assets sufficient to satisfy the preferred claims. After the mortgage has been 'allowed and approved, or established by suit,' the manner of proceeding to enforce it is prescribed by the statute (art. 1168). Although it is a privileged claim, and has a preference over debts generally which are not secured by a lien, yet there are certain enumerated debts which have preference by the statute over debts secured by mortgage or other lien; as funeral expenses, expenses of the last sickness, and expenses of administration, including the allowance to the widow and children, and the expenses incurred in the preservation, safe keeping and management of the estate. (Art. 1187.) These provisions of the statute requiring the mortgage to be duly presented for allowance and approval, and giving the enumerated claims a preference in the order of payment, would be defeated, if the mortgagee can proceed, as in this instance, to enforce it under the power of sale of a trustee appointed by the testator. That the mortgage contains a power to sell does not change its essential character. It is still a security, and nothing but a security for the payment of a debt."

That these are the reasons given upon which were based the decisions relied on by defendants in error is clearly brought out in the following passage from the opinion in Rogers v. Watson, supra: "In Black v. Rockmore, at the time of the sale under the power the widow of the deceased mortgagor had filed a bond and inventory under the statute and was administering the community estate as survivor. In Robertson v. Paul, and in the other cases cited, there were regular administrations pending at the time of the sale. The sales were not held void upon the ground that the death of the mortgagors had revoked the power, because it was recognized that the powers were coupled with an interest, and that they remained in force after the death of the respective constituents. But the exercise of the powers after such deaths and during an administration upon the mortgagors' estates was regarded as inconsistent with our statutes, which give to certain classes of claims against a decedent's estate priority of payment over a debt secured by a lien, even as to the property subject to the incumbrance. But in this case, according to the allegations of the petition, at the time of the sale more than four years had

elapsed from the date of Rogers' death and no administration had ever been had upon his estate. Under the statute as it then existed and now exists, after a lapse of four years from the death of a person the Probate Court lost its power to grant letters of administration upon his estate. Rev. Stats., art. 1827. Consequently the provisions of the statute for establishing and ranking claims against an estate were no longer an obstacle to the sale. The debt being the purchase money promised to be paid, the holders of the notes were entitled to a preference in payment over all other .claims whatever. Therefore the reason for the rule laid down in the case cited no longer existed, and we are of opinion that the rule itself should be held no longer applicable. After the time has passed within which letters of administration could be granted upon Rogers' estate, the debt being for a vendor's lien and no claim having priority over it as to the mortgaged premises, we see no good reason why the power which had been in abeyance did not immediately become effective, and why the sale did not pass the title to the property in controversy."

As applied to administrations under the control of the Probate Courts, the policy of the probate law, reflected in Robertson v. Paul, produces many consequences similar to that adjudged in that decision. No suit to establish a monied demand against such an estate is allowed except as a consequence of the refusal of the administrator or of the Probate Court to allow or approve it, and then only to establish it and not to enforce its payment. Judgments for money against decedents, or their administrators, can not be enforced by executions but must be certified to the Probate Courts. Property in the hands of administrators on which liens exist to secure debts, whether such liens are created with or without powers of sale, can not be sold under process from other courts but must be subjected through proceedings in the courts controlling the administrations. The allowances to the widow and children must be made and their payment provided for by those courts. All claims must be passed upon, classified and paid under their orders. None of these things are true of administrations by independent executors. Such trustees make allowances, pay claims and settle up estates without any control from the Probate Court. They are liable to suits to recover debts, or allowances, and to enforce liens, or other rights, existing against the estates in any of the courts of civil jurisdiction, and the judgments of such courts are enforced against property of the estate in their hands by the usual processes. It is true, as held in Roy v. Whitaker (92 Texas, 346), that the management and settlement of an estate by an independent executor is an administration, but this proves little to the present purpose. The question is, is it that kind of an administration which, by force of the probate law, extinguishes or supersedes the power of sale of a trustee appointed by the testator? The contrast between such administrations and the regular ones satisfies us that the reasons upon which the rule under discussion was founded do not apply to them. That rule, broadly stated, is, that all claims for money, including those secured by liens, must be

probated and enforced through the Probate Court and that the existence of a power of sale does not alter the case. The very statement of it shows that it does not apply to independent administrations. No creditor can go into the Probate Court to enforce his claim against an executor so long as his independent control is allowed to continue, whereas all creditors are required to go into that court to enforce claims against regular administrators. In the case of independent administrations the statutes have not required any course of procedure through which relief may be had, while in the other case the mode of proceeding is carefully and exclusively prescribed. The conclusion is that the creditor is left to pursue the general rules of law by which remedies are given and one of those remedies, in cases like this, is the exercise of the power of sale. We can find no reason for holding that such a power can not be exercised, seeing that it is not extinguished by death nor forbidden by any provision of the probate law like those controlling regular administrations.

Counsel cite the opinion of Chief Justice James in the case of Swearingen v. Williams (28 Texas Civ. App., 559; 67 S. W. Rep., 1061; 4 Texas Ct. Rep., 818), in which a different conclusion was reached upon this question. While that case did not reach this court and is not binding upon us, we have given due consideration to the clearly stated reasoning of the opinion and do not find it convincing. While it is true, as is there argued, and as was held in Roy v. Whitaker, that an estate which has been committed to the independent control of an executor is still within the scope of the general jurisdiction of the Probate Court, in such sense that in certain contingencies, that court may make some orders affecting it, or may take charge of and have it administered as other estates, it is not true that the manner of enforcing claims against it, while under the independent control of the executor, is the same as that prescribed for other estates; and it is the existence of the statutory provisions so prescribing as to other estates that sustains the rule in Robertson v. Paul. The authority given to the Probate Court to make certain orders while the estate is being independently administered, does not affect the question, and the taking of the administration out of the independent control of the executor and subjecting it to regular administration, as other estates, only determines the proper course of proceedings thereafter to be had. The power in the court ultimately to assume such control no more negatives the prior existence of the power of sale than it negatives the right of action in the court of civil jurisdiction for the enforcement of claims. After the assumption of such control by the Probate Court both modes of procedure may be superseded by that prescribed in the probate law, but this does not prove that they were not authorized so long as the independent control of the executor continued.

Another case especially relied on is that of Black v. Rockmore (50 Texas, 88), in which was involved a sale by a trustee in a deed of trust on the *homestead* of the husband and wife, made after the husband had died and the wife had qualified as the sur-

vivor of the community estate and when the estate of the husband was insolvent. All the rights of the parties vested and the proceedings were had while the probate law of 1870 was in force. It would be difficult to make a distinction respecting the question before us based only on a difference between the kind of administration there in question and that of an independent executor; and if we should accept, as the decision of the court, all that is said in the opinion, it would go far towards sustaining the contention of defendant in error. But to properly understand that decision we must read it in connection with such others as Blair v. Thorpe, 33 Texas, 38; Reeves v. Petty, 44 Texas, 249; McLane v. Paschall, 47 Texas, 365; Abney v. Pope, 52 Texas, 288; and Armstrong v. Moore, 59 Texas, 646. These cases establish the doctrine, that, while a mortgage or deed of trust with power of sale, given by the husband and wife on the homestead, under the laws in existence prior to the adoption of the present Constitution, was valid and enforcible by the exercise of the power during the life of the husband, yet the right to the homestead, given by the law to the wife after the husband's death and when his estate was insolvent, was superior to the *lien of the creditor.* The power of sale, in those cases, was important only because it was the only means through which a lien on the homestead could ever have been enforced. The point was that it could not be enforced against the widow's homestead right after the death of the husband, and this would have been true even if there had been no administration, as her right was not dependent on administration. The different legal propositions connected with the subject had been the source of many differences of opinion among the judges of this court, and the opinions in Black v. Rockmore and Abney v. Pope show that such differences existed when the former was decided. This explains the following significant and unusual statement with which Judge Bonner begins his opinion in Black v. Rockmore: "This case decides that the sale of a community homestead of an insolvent estate, after the death of the husband and after the surviving wife had filed the bond, inventory, and appraisement required by the probate act of 15th August, 1870 (Paschal's Dig., acts. 5494-5497), made under a deed of trust, with power of sale, previously executed by the husband and wife, did not vest title in the purchaser over the homestead right of the wife." That is precisely what that case *decided* and all that it decided. The argument of Judge Bonner includes the proposition as to the superiority of the wife's right to that of the creditor, and also the further proposition that the power of sale, under the doctrine of Robertson v. Paul, was revoked by the death of the mortgagor rollowed by the kind of administration there under consideration. As the court held that the title to the homestead vested in the widow free from the lien, it necessarily followed that the trustee could not, by a sale, give superiority to the creditor's claim, and there was no question as to a revocation of the power by the widow's administration as survivor. There could be no power to sell where there was no right to be enforced. So the lien of a

creditor, in an estate independently administered, may have to yield to the prior rights of others; but the statute does not require him, as it does creditors in the ordinary administrations, to pursue and establish his right and to have questions of priority settled in any prescribed way. It leaves him to pursue the remedies given to him by other rules of law. He can not go into the Probate Court to establish and enforce his lien. He is permitted by the statute to sue in other courts, but is not required to do so when he can secure his rights in another lawful method without resort to the courts. He can not, of course, by a sale under the power destroy superior rights of others, but the courts administering law and equity are open to all who have rights conflicting with his or their enforcement, and, when they are set up, the question becomes one as to priority of right and not merely as to the revocation of the power of sale. In referring to the effect of regular administrations upon powers of sale, such as this, we are not, of course, intimating the opinion that the actual opening of an administration is necessary. That question is not before us. If it be conceded that a power of sale can not be exercised where the estate of the deceased mortgagor is unadministered and where the time in which administration is permitted has not elapsed, the concession does not reach cases like this, where the estate is represented by an independent executor, against whom the creditor is left by the probate law to pursue the remedies applied to his case by general principles and is not confined to any prescribed course, as in the case of regular administrations.

The other grounds set up in the petition for injunction were settled against defendant in error by the decision of the Court of Civil Appeals on the first appeal.

The courts below erred in enjoining the sale and the judgments are reversed and the cause dismissed.

*Reversed and dismissed.*