## MOYE v. GOOLSBEE et al.
### No. 3376.

Court of Civil Appeals of Texas. Beaumont.
Feb. 9, 1939.

Rehearing Denied Feb. 15, 1939.

B. C. Fuller and Grover C. Lowe, both of Woodville, and McNeill & McNeill, of Beaumont, for appellant.

E. J. Fountain, of Houston, and J. E. Wheat and C. E. Smith, both of Woodville, for appellee.

O'QUINN, Justice.

Eustice D. Moye, as Guardian of the estate of Mrs. Emma Moye, filed this suit July 17, 1937, against appellee, C. E. Goolsbee, in trespass to try title to an undivided one-half of a 120 acre tract of land situated in Tyler County, Texas, known as the W. T. Arthur tract. His petition contained two counts: (a) in trespass to try title, and (b) for equitable relief to recover an undivided one-half of the described land and for an accounting, with offer to do equity.

The answer was by general demurrer, general denial and plea of not guilty. Also by the three, five, ten, twenty-five, two and four year statutes of limitation, the two and four year statutes plead against the plea for an accounting by plaintiff.

The case was tried to a jury, but at the conclusion of the evidence, on motion of defendant, the court instructed a verdict for the defendant which was returned and judgment accordingly entered. Motion for a new trial was overruled, and we have the case on appeal.

The record discloses the following facts: Some time about November 17, 1897, J. W. Moye married Miss Emma Sheffield (the present Mrs. Emma Moye). Four children

were born to them—Lena (now Mrs. Sidney Morgan), E. D. Moye, E. B. Moye and Clyde Moye, sons. On January 8, 1907, Mrs. Moye was duly convicted of lunacy and placed in a state asylum where she has ever since been, and now is. On October 30, 1918, C. E. Goolsbee was the owner of and on that day conveyed the 120 acres of land in controversy to J. W. Moye for a consideration of $100 cash and his fourteen vendor lien notes of even date payable to the order of C. E. Goolsbee on one, two, three, four, five, six, seven, eight, nine, ten, eleven, twelve, thirteen and fourteen years after date, respectively, and bearing eight per cent interest. Moye immediately took possession of the land. He paid the first three notes. He died November 23, 1922, intestate. There was no administration on his estate. Shortly before his death he went to live with one of his sons, E. B. Moye, at Port Neches. This was because of ill health and he had no one to live with him on the place. One of the sons, Clyde Moye, died. He had never been married. At the time of J. W. Moye's death there was about $1300 unpaid on the notes. After J. W. Moye died, some time prior to February 18, 1927, no payments having been made on any of the notes, Goolsbee conferred with the children of J. W. Moye as to whether they wished to pay the notes and take the land, and they said they were unable to pay the notes and were willing to reconvey the land to Goolsbee, and on February 18, 1927, did execute, as the heirs and only heirs, of J. W. Moye, a deed reconveying the land to Goolsbee, in consideration of $20 cash and the cancellation of "notes numbers 4 to 14, inclusive", the remainder of the unpaid consideration for the land. After Moye's death, at what particular date we do not find in the record, Goolsbee took possession of the land, and exercised acts of ownership, repairing the improvements, selling the timber from the land, placed a tenant on the land, and on June 22, 1937, leased the land to A. C. Matlage for oil and gas purposes. This lease by mesne conveyances was finally lodged in Fidelity Oil & Royalty Company. No one had occupied the premises from after the death of J. W. Moye until Goolsbee took possession of them. It was agreed that Goolsbee on March 14, 1929, paid taxes on the land from 1912 to 1927, inclusive, in the sums of $180.01 and $138.88, and that from 1912 to 1918 (the year the land was sold to Moye) Goolsbee paid $96.01, and that Goolsbee did not render the land for taxes after his sale to Moye until 1927, the date of the reconveyance to him by the Moye children. That for the years 1919 to 1922, inclusive, Moye rendered the 120 acres for taxes, but did not pay the taxes. Goolsbee rendered the land for taxes after 1928 and paid same, aggregating $219.22.

▪ The deed from Goolsbee to Moye was to him alone. That vested the legal title in Moye alone, subject to the lien for the payment of the purchase money notes, the interest of Mrs. Moye was therefore an equitable one subject likewise to such payment. Patty v. Middleton, 82 Tex. 586, 17 S.W. 909; Mitchell v. Schofield, 106 Tex. 512, 171 S.W. 1121.

▪▪ Under the express reservation of the vendor's lien notes in the deed from Goolsbee to Moye, the superior title to the land remained in Goolsbee until the purchase money notes were paid. On the failure to pay the purchase money notes, Goolsbee had the legal right to rescind the sale and take possession of the property, which he did. In other words to rescind the sale by resuming possession of the land and treating it as his own.

In Barker v. Temple Lumber Co., 120 Tex. 244, 37 S.W.2d 721, 722, it is said:

"The conveyance from Bennett to Damon was executory. Damon could only perfect his title to the land by paying the purchase-money notes in accordance with the terms of his agreement. Upon his failure to do so, Bennett had the right to rescind the sale and convey the property to others. Likewise Rogers held no title to this property except one conditioned upon the discharge of the obligation for the purchase-money notes. Farmers' Loan & Trust Co. v. Beckley, 93 Tex. 267, 54 S.W. 1027. Hale v. Baker, 60 Tex. 217.

"The undisputed evidence shows that the purchase-money notes executed by Damon were never paid, and that Bennett exercised his right of rescission by conveying the lands to other parties. It is our conclusion that this rescission was binding upon Damon and his vendee, Rogers, to the extent that neither vendee could successfully maintain an action of trespass to try title against those claiming under the original vendor." (Citing authorities.)

In the case of Elymas Johnson v. Smith, 115 Tex. 193, 280 S.W. 158, 160, Johnson bought land from Sherrod, for a con-

sideration of $1,000, and the deed from Sherrod to Johnson retained a vendor's lien on the land to secure the payment of four promissory notes covering said sum. Johnson died still owing the purchase money. Before he died he agreed with John Johnson and Edward Johnson, two of his sons, that if they would pay the land out they could have it. This they did, and after Elymas Johnson's death the other heirs claimed the property.

The suit reached the Supreme Court, and it, speaking through Judge Greenwood, said: "Under the express reservation of the vendor's lien in Sherrod's deed, the superior title to the land remained in Sherrod until the purchase-money notes were paid. Masterson v. Cohen, 46 Tex. [520], 523, 524; Hamblen v. Folts, 70 Tex. [132], 135, 7 S.W. 834. No title to nor interest in the land was or could be acquired by Elymas Johnson save such as was conditioned on payment of the notes. Howard v. Davis, 6 Tex. [174], 182; Roosevelt v. Davis, 49 Tex. [463], 472; Evans v. Ashe, 50 Tex.Civ.App. [54], 63 [108 S.W. 398, 1190]. The contract of sale could have been rescinded by parol agreement between Sherrod and Elymas Johnson or by Sherrod alone on Elymas Johnson's default to pay the notes or repudiation of his obligation to pay same. Thompson v. Robinson, 93 Tex. [165], 170, 54 S.W. 243, 77 Am.St.Rep. 843; Davis v. Cox, (Tex.Com.App.) 239 S.W. [917], 918. If it could be said that Elymas Johnson ever became invested with any claim to or interest in the 200 acres of land to which homestead rights might attach, such claim or interest was entirely subordinate to the superior equitable title of plaintiffs in error, under the agreement with Elymas Johnson and compliance therewith. On Elymas Johnson's repudiation of his purchase or default to meet his notes, even his possession would have become wrongful but for the assumption and fulfillment of his contract by plaintiffs in error."

But, as we understand appellant's contention, it is that rescission of the sale of the land to Moye by Goolsbee's resuming possession of the land, after the death of Moye, the notes not having been paid, and his exercising acts of ownership of the land, could not be done as against the rights of Mrs. Moye, she being insane and confined in an insane asylum, and so the attempted rescission was futile. That the rights of Mrs. Moye (her community interest in the land) were in no sense lessened by such attempted rescission.

■ We think the contention is not sound. The deed through which Mrs. Moye must claim her asserted right, the one from Goolsbee to her husband, expressly retained a vendor's lien against the land to secure the payment of the fourteen notes given in part payment for the land, and upon the death of her husband, J. W. Moye, a title different from that possessed by him did not arise. Mrs. Moye still held whatever right she might have had before his death inferior and junior to Goolsbee's right to payment of the notes, and upon default of such payment, when Goolsbee resumed possession of the land, with or without the deed from the Moye children, and exercised acts of ownership over the land, and finally leased the land for oil and gas purposes, such was a rescission of the contract of sale to her husband and destroyed any right she might have had. It is not believed that she being mentally incompetent in any way increased her right, but same remained as if she had at all times been in full possession of her mental faculties, and the default in the payment of the notes had occurred, as it did, and the rescission had followed such default.

In Jackson v. Ivory, Tex.Civ.App., 30 S.W. 716, 718, it is said: " * * * The estate of Cox had no title to the land as against the vendor so long as the purchase money remained unpaid, and it could not become subject to administration as ordinary assets. The vendor's right and the right of his assignee were not affected by the death of Cox. His death did not create a title different from that possessed by him, and his heirs could not, upon his death, become vested with rights in the land superior to his, as against the superior title and right of the vendor's assignee. The title to the land was not in the estate, and the surviving constituents of the family would have no more right to a homestead or to a year's allowance preferred to the vendor's rights than they could have to other lands belonging to strangers. In this respect the vendor's lien is different from ordinary mortgages and liens created by contract of the deceased mortgagor. The latter are subordinate to administration and statutory rules of priority declared and enforced therein. [Citing authorities.] In the very nature of the vendor's rights in the land and his lien, which, under circumstances of failure of the vendee

to pay, will entitle the former to a recovery of the land itself or a rescission of the sale, there can be no right in the vendee, or his heirs after his death, that can defeat it."

It is believed that the condition of Mrs. Moye (insane and confined in an asylum) at the time Goolsbee rescinded the sale and resumed possession of the land is not different in law from that of a minor under the same circumstances. It has been held that minors acquiring rights in property by descent do not acquire rights superior to that of a grantor under the facts here shown—that is do not acquire rights preventing the grantor from rescinding the sale when the purchase money notes have not been paid. This identical question was before the Amarillo Court of Civil Appeals in Fullerton v. Scurry County, 143 S.W. 971, 976. The court said: "In disposing of this contention, it must be borne in mind that our courts have uniformly held that the grantee's rights to land under an executory contract of sale were simply to acquire the title to the land by complying with the contract of sale; that the superior title rested in the grantor until the purchase price had been fully paid; that not even a homestead right could be acquired in the land by the grantee, or under him, superior to or in such way as to deprive the grantor of his rights. It has also been held that even minors acquiring rights by descent under such a grantee do not acquire rights superior to that of the grantor. Jackson v. Ivory [Tex.Civ.App.] 30 S.W. 716; Thompson v. Robinson, 93 Tex. 165, 54 S.W. 243, 77 Am.St.Rep. 843. In other words, the grantee under such instrument, whether a minor or an adult, must comply with the contract of sale, in order to mature or keep alive his rights under the contract, and a failure so to do constitutes a breach on his part of the contract of sale, entitling the grantor to exercise the options given him by law, one of which is to rescind the contract of sale and resume possession of the land, provided he elects so to do and promptly does so, and thus avoid the presumption of an acquiescence on his part in the breach of the contract so made by the grantee; and this he will be permitted to do, in the absence of some equity that will prevent him from so doing, and we fail to find in this case any such equity in the minor as should be held to prevent the grantor from having rescinded, as against him, at the time it was done, and thereby depriving him of all further rights in or to the land."

In Williams v. Tooke, 116 S.W.2d 1114, 1124, the Texarkana Court of Civil Appeals had before it a case where minors were involved. In holding that such disability did not prevent rescission, the court said: " * * * Buckley conveyed this land to Pilant, thereby exercising his right of rescission as owner of the superior title, if the sale were void, Buckley sold to Adams, and Adams sold to Tooke, the present owner. It is our opinion that the sale of this land by Buckley, the later transfers thereof by Pilant, Adams, and Tooke, and the mineral transfers by Tooke, all for value, under the record in this case, based upon the doctrine of rescission, unless inequitable, effectively passed the title to this land to the respective vendees. Scott & Carmody v. Canon, Tex.Com.App., 240 S.W. 304; Rooney v. Porch, Tex.Com. App., 239 S.W. 910; Evans v. Bentley, 9 Tex.Civ.App. 112, 29 S.W. 497, 36 S.W. 1070; Waggoner v. Tinney, 102 Tex. 254, 115 S.W. 1155. This is true irrespective of the fact that some of the appellants are still minors, for the reason that Phillips' rights respecting this land were not diminished nor were the rights of the minors increased by the death of Porter Williams. Thompson v. Robinson, supra." See, also, Tilley v. Kangerga, Tex.Civ.App., 83 S.W. 2d 787.

Thus it is clear that the death of a grantee, leaving members of his family under disability, does not destroy the right of rescission of a grantor, nor work any change in the title.

But it is insisted that Goolsbee could not rescind the sale unless he had given notice of his intention to do so, which he did not do, and further that as Mrs. Moye was insane at the time of the claimed rescission, and ever since, it would be inequitable to permit the rescission and deny her the right to recover her community interest in her deceased husband's estate.

In the state of the record, under Rule 24 for Courts of Civil Appeals, the question is not before us. Rule 24 requires that all assignment of errors against the judgment sought to be corrected must be distinctly set forth in the motion for a new trial, and if it is not so specified, it is waived. Appellant's motion for a new trial nowhere raises this question. How-

ever, if the question was before us, from a careful inspection and consideration of all the facts disclosed by the record we would hold the assignment without merit.

From what we have said, it follows that the judgment should be affirmed, and it is so ordered. Affirmed.