Kimberly WALTON, Adminstratrix of the Estate of Joey Glenn (Joe) Walton, Deceased, Appellant,

v.

The FIRST NATIONAL BANK OF TRENTON, TRENTON, TEXAS, Appellee.

No. 06–97–00042–CV.

Court of Appeals of Texas, Texarkana.

Submitted Sept. 30, 1997.

Decided Oct. 21, 1997.

Rehearing Overruled Nov. 25, 1997.

Scott Pelley, Nall, Pelley & Wynne, Sherman, for appellant.

Peter K. Munson, Munson, Munson, Pierce, Cardwell, Sherman, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

CORNELIUS, Chief Justice.

Kimberly Walton, administratrix of the Estate of Joey Glenn Walton, deceased, appeals from the trial court's judgment for the First National Bank of Trenton in its trespass to try title suit against the Estate.

The Estate brings five points of error, which can be summarized into three contentions. First, the Estate contends that the Bank did not properly follow the probate

code's procedure for filing a claim, and its claim is barred due to the probate code's limitation provision. Second, the Estate contends that the Bank's sole remedy is by way of the probate code, and thus the district court erred in granting judgment for the Bank in its trespass to try title suit. Third, the Estate contends that the district court erred in denying the Estate's statutory and equitable bills of review that challenge the probate court's allowance of the Bank's claim.

Joey Glenn Walton died intestate on February 18, 1995. Before his death, he executed and delivered to the Bank a consumer promissory note in the principal amount of $100,000.00 and secured by a vendor's lien and a deed of trust. He gave this note to the Bank to finance his purchase of real property.

On November 28, 1995, Kimberly Walton, who had been appointed administratrix of the estate, gave notice of claims to creditors and specifically gave notice to the Bank as a secured creditor. On November 29, 1995, the Bank presented to Walton and filed with the county clerk an authenticated secured claim based on the purchase money note. Walton neither accepted nor rejected the Bank's claim within the thirty-day period of presentation and filing. On December 29, 1995, the probate court judge endorsed the Bank's claim as being allowed by the court. On February 1, 1996, the probate court transferred and assigned to the district court all contested probate matters. The Bank refiled its claim with the district court on February 28, 1996. The Estate discovered on March 1, 1996 for the first time that the probate judge had endorsed and allowed the Bank's claim. On April 1, 1996, the Estate filed a memorandum rejecting the bank's claim. On April 4, 1996, the Bank requested the district court to confirm the claim. Then on April 22, 1996, the Bank filed in the district court its original petition based upon the original claim, which was rejected by the Estate.

Subsequently, on May 24, 1996, the Bank filed a suit in trespass to try title, alleging that it held a purchase money vendor's lien and superior title to the land, and that it was entitled to possession of the real property as a result of the Estate's default in payment. In response the Estate requested the court to declare the vendor's lien of no force and effect and enter an order releasing the lien of the Bank on the property and removing the cloud cast on the Estate's title.

On September 13, 1996, the Estate filed an original petition for both statutory and equitable bills of review, requesting that the order of the county judge approving the original claim of the Bank be set aside and vacated. Finally, on January 7, 1997, the district court consolidated all matters between the Bank and the Estate into one action and entered judgments that the Bank recover title to and possession of the estate property, and denying the Estate's request for both a statutory and equitable bill of review.

We conclude that the district court's judgment is correct for the following reasons:

First, the Estate did not appeal from the probate court's approval of the Bank's claim. The probate court's order thus became a final judgment not vulnerable to collateral attack. The Estate argues that the probate court was without jurisdiction to approve the claim, so its order doing so is null and void. We disagree. The probate court had plenary jurisdiction of the Estate, with the power to issue all necessary and appropriate orders. TEX. PROB.CODE ANN. § 5A(a) (Vernon Supp.1997). The fact that the court approved the Bank's claim in a manner contrary to the probate code's prescribed procedure for doing so rendered the order erroneous, but only voidable, not void. Judgments and appealable orders rendered without the observance of statutory requirements that are purely procedural are not void, however irregular or erroneous they may be. *Ex parte Coffee*, 160 Tex. 224, 328 S.W.2d 283, 291 (1959); *Freeman v. Freeman*, 160 Tex. 148, 327 S.W.2d 428, 433 (1959). The probate code provisions in Section 312 are procedural. There is no express provision prohibiting the court from approving the claim. If the court's action is erroneous, it may be appealed. *Huston v. Federal Deposit Ins. Corp.*, 800 S.W.2d 845 (Tex. 1990). If it is not appealed, it becomes final

and not subject to collateral attack. *Bell v. National Bank of Commerce of San Antonio*, 102 S.W.2d 247 (Tex.Civ.App.—San Antonio 1937, writ ref'd).

The Estate relies on two cases to argue that the court's approval of the claim is void. They are *Christian v. Pace*, 371 S.W.2d 399 (Tex.Civ.App.—Beaumont 1963, no writ), and *Poole v. Rutherford*, 199 S.W.2d 665 (Tex. Civ.App.—Fort Worth 1947, writ ref'd n.r.e.). Those cases are inapposite. Their facts are distinguishable, and the opinions fail to make the proper distinction between void and voidable judgments. *See* 47 TEX. JUR.3D *Judgments* § 69 (1986).

■ The Estate also claims that it did not receive notice of the probate court's approval of the Bank's claim, so it was not required to appeal from the order. No notice is required by the probate code. Moreover, parties are charged with notice of all orders and judgments rendered in their proceedings, unless there is a specific statute or rule requiring notice. *Mayad v. Rizk*, 554 S.W.2d 835 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.).

Additionally, the Bank was entitled to recover the land on which it had a vendor's lien and the superior title.

■ The Texas Probate Code provides a system for the presentment and payment of claims. Typically the estate of a deceased person is placed in the control of the probate court and any claim against the estate must be presented to the court through its appointed officer, but this rule does have some well-recognized exceptions. *Williams v. Tooke*, 116 S.W.2d 1114 (Tex.Civ.App.—Texarkana 1938, writ dism'd). The probate code provides that all claims for money must be presented to the representative of an estate. *Connelly v. Paul*, 731 S.W.2d 657, 659 (Tex.

App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.) (citing TEX. PROB.CODE ANN. § 314 (Vernon 1980)). Only claims for money need be presented to the probate court before initiation of a suit on the claim.[1] A claim for money includes claims for a definite amount based on specific data, but it does not include a claim for an undetermined amount. *Anderson v. First Nat'l Bank of El Paso*, 120 Tex. 313, 38 S.W.2d 768 (1931); *Connelly v. Paul*, 731 S.W.2d at 659. Claims for unliquidated amounts, injunctive relief, *or for title to or possession of property* need not be presented to the administrator before filing a suit for those claims. *Connelly v. Paul*, 731 S.W.2d at 660; *see also* Austen H. Furse, *Claim Practice in Probate Matters*, 34 TEX. B.J. 667 (1971).

■ The Bank held an express vendor's lien coupled with a deed of trust on the property in question. The warranty deed with vendor's lien recites, "The vendor's lien against and superior title to the property are retained until each note described is fully paid according to its terms, at which time this deed shall become absolute." This is sufficient to create a valid vendor's lien. James R. Norvell, *The Vendor's Lien and Reservation of the Paramount Legal Title– The Rights of Vendors, Vendees, and Subvendees*, 44 TEX. L. REV. 22, 24 (1965).[2]

■ Superior title is held by the vendor where an express vendor's lien is retained to secure unpaid purchase money, and the vendee has a mere equitable right to acquire title by carrying out the agreement. *State v. Forest Lawn Lot Owners Ass'n*, 152 Tex. 41, 254 S.W.2d 87, 91 (1953); *Ransom v. Brown*, 63 Tex. 188, 189 (1885); *Lusk v. Mintz*, 625 S.W.2d 774 (Tex.App.—Houston [14th Dist.] 1981, no writ); *Hudson v. Norwood*, 147 S.W.2d 826, 828 (Tex.Civ.App.—Eastland

---

1. The Texas Supreme Court has stated, "A claim for money means literally the claim that a debt exists. A claim for a lien is something more, a claim not only that there is a debt but also that a lien exists for its enforcement. The lien is no part of the debt, it is a mere incident of the claim for the money." *Western M. & I. Co. v. Jackman*, 77 Tex. 622, 14 S.W. 305, 306 (1890).

2. Land transactions usually involve relatively large amounts of money, and for this reason it is

customary to make conveyances on credit, with all or part of the purchase money unpaid. The debt is usually evidenced by purchase money notes executed by the vendee. Technically, a vendor's lien is one which arises from the transaction as a matter of law. *Helm v. Weaver*, 69 Tex. 143, 6 S.W. 420 (1887). However, contract liens securing the purchase price are also generally referred to as vendor's liens.

1941, writ dism'd judgm't cor.); *Moye v. Goolsbee,* 124 S.W.2d 925, 926 (Tex.Civ. App.—Beaumont 1939, writ ref'd); *Jackson v. Ivory,* 30 S.W. 716 (Tex.Civ.App.1895, no writ); *see also* James R. Norvell, 44 TEX. L. REV. at 24.

 An express vendor's lien is different from a regular mortgage. *Jackson v. Ivory,* 30 S.W. at 718. A claim based on a mortgage is subordinate to the administration of the estate through the probate code. *Id.* But an express vendor's lien is not subordinate to the administration of an estate because the vendor retains superior title to the property, and a vendee's death cannot transform his title into something different from what he had before his death. In *Jackson* it is stated:

> The title to the land was not in the estate, and the surviving constituents of the family would have no more right to a homestead or to a year's allowance preferred to the vendor's rights than they could have to other lands belonging to strangers.... In the very nature of the vendor's rights in the land and his lien, which, under circumstances of failure of the vendee to pay, will entitle the former to a recovery of the land itself or a rescission of the sale, there can be no right in the vendee, or his heirs after his death, that can defeat it.

*Id.* at 718; *see also Moye v. Goolsbee,* 124 S.W.2d at 927–28.

 The vendor has a choice of remedies on the vendee's default. The vendor may sue for his money, he may rescind the contract and take possession, or he may sue to recover title and possession. *Lusk v. Mintz,* 625 S.W.2d at 776; *Zapata v. Torres,* 464 S.W.2d 926 (Tex.Civ.App.—Dallas 1971, no writ); James R. Norvell, 44 TEX. L. REV. at 23. The remedy of rescission is separate and distinct from and wholly independent of the remedies to enforce payment. *Lusk v. Mintz,* 625 S.W.2d at 776; *Bunn v. City of Laredo,* 245 S.W. 426, 429 (Tex. Comm'n App.1922, judgm't adopted). Thus, the Bank could sue for the land rather than for money, and it could bring that suit in district court rather than proceeding in probate court. The district court correctly ruled that the

Bank could recover possession of the property in its trespass to try title suit.

 The Estate argues that the only remedy the Bank has is through the probate court by using the code's presentation and rejection system. That is true when the claim is solely for money, but an action for possession and title to property due to an express vendor's lien is not a claim for money and is not required to be asserted through the probate court. *Lusk v. Mintz,* 625 S.W.2d at 776.

 The Estate argues that allowing the Bank to use this procedure will circumvent the probate code's system of presentation of claims, classification of claims, and order of payment. In particular, the Estate points to the fact that an express vendor's lien would take precedence over debts such as funeral expenses and administration expenses, which would run contrary to the probate code's order of payment. Nevertheless, an express vendor's lien on real property is superior to first and second class claims in an estate administration, even though the relevant statute places claims secured by liens in the third class. *Moye v. Goolsbee,* 124 S.W.2d at 927; *Williams v. Tooke,* 116 S.W.2d 1114; *Toullerton v. Mahncke,* 11 Tex.Civ.App. 148, 32 S.W. 238, 239 (1895, no writ); *Jackson v. Ivory,* 30 S.W. at 718.

The Estate also argues that the holding in the *Lusk* case should not be followed because it is based on faulty legal reasoning. The Estate supports this argument by citing two cases. The first, *Taylor v. Williams,* 101 Tex. 388, 108 S.W. 815 (1908), dealt with the issue of whether the power of sale in a deed of trust is revoked by the death of the mortgagor. The court held that the power was not revoked by the death of the mortgagor. *Taylor* does not undermine the holding of *Lusk,* however, because *Taylor* involved a deed of trust, not a vendor's lien. The Bank here held a deed of trust to secure its lien, but it did not exercise the right of nonjudicial foreclosure it had under that deed of trust. Rather, it sued for the land by virtue of its superior title under the vendor's lien.

The second case is *Rivera v. Morales,* 733 S.W.2d 677 (Tex.App.—San Antonio 1987,

writ ref'd n.r.e.). *Rivera* deals with a contract of sale and not an express vendor's lien. *Id.* at 678. *Rivera* does state the correct proposition of law that a mortgagee must go through the administrator when the mortgagor dies, whether the mortgagee wants the payments and money on the mortgage or whether he wants to foreclose. But *Rivera* does not even mention an express vendor's lien and is thus not in conflict with *Lusk.* The only true precedent to the unique facts of this case is the *Lusk* case, which was cited with approval by *Connelly* in 1987. Additionally, the Estate has cited no case holding that an express vendor's lien must be presented to the administrator of an estate before the vendor can sue for trespass to try title.

The Estate also argues that the Bank made an election of remedies by filing a foreclosure proceeding and is barred from pressing its trespass to try title suit. When a vendor successfully pursues a foreclosure proceeding, he is barred from subsequently filing a trespass to try title suit. *Breeding v. Farm & Home Sav. & Loan Ass'n of Missouri,* 90 S.W.2d 272 (Tex.Civ.App.—Eastland 1935), *rev'd on other grounds,* 131 Tex. 518, 115 S.W.2d 615 (1938). But simply bringing the foreclosure proceeding does not bar a subsequent trespass to try title suit if the foreclosure proceeding was unsuccessful. *McPherson v. Johnson,* 69 Tex. 484, 6 S.W. 798 (1888); *Benskin v. Barksdale,* 246 S.W. 360, 364 (Tex. Comm'n App.1923, judgm't adopted). In this case, the Bank never obtained a decree of foreclosure against the Estate, and it was not precluded from pursuing its trespass to try title suit.

Also, the Estate argues that the Bank is barred from pursuing a trespass to try title suit because it filed a claim with the administratrix under the probate code, and then missed the ninety-day limitations period after being rejected as a matter of law. There is no consequence to failing to pursue a suit on a rejected claim that was unnecessarily presented. *Lusk v. Mintz,* 625 S.W.2d at 776 (citing 18 M.K. WOODWARD & ERNEST E. SMITH, III, PROBATE AND DECEDENTS' ESTATES § 903 (Texas Practice 1971)). The Bank's claim was not one for money and thus did not have to be presented to the administratrix and cannot be barred by the probate code's limitations period. *Id.* The Bank has a right under common law to a trespass to try title suit that is independent of a claim in the probate code's claims procedure. The district court correctly awarded the property to the Bank.

The judgment of the district court is affirmed.