*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★ ★ ★ ★

# MEMORANDUM OPINION

Nos. 04-08-00782-CV; 04-08-00929-CV & 04-09-00092-CV

**IN THE MATTER OF THE ESTATE OF** Daniel B. **LEVINSON**, Deceased

From the Probate Court No. 2, Bexar County, Texas
Trial Court No. 2008-PC-0290
Honorable Tom Rickhoff, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
Phylis J. Speedlin, Justice
Steven C. Hilbig, Justice

Delivered and Filed: October 21, 2009

AFFIRMED IN PART; REVERSED IN PART; DISMISSED FOR LACK OF JURISDICTION
IN PART

This is a consolidated appeal of three probate court orders relating to the Estate of Daniel
Bernard Levinson. Daniel's widow, Stacy Levinson, first challenges an order directing the
temporary administrator to execute a transfer of lien. Stacy also challenges the probate court's order
approving the payment of $35,000.00 in administrator's/attorney's fees to the temporary
administrator. Finally, Stacy challenges the probate court's order authorizing the employment of
appellate counsel to represent the estate in these consolidated appeals. Because we do not have
jurisdiction to address the order relating to the employment of appellate counsel, we dismiss appeal

number 04-09-00092-CV for lack of jurisdiction. We affirm the order in appeal number 04-08-00782-CV, but we reverse the order in appeal number 04-08-00929-CV.

### BACKGROUND

Daniel Bernard Levinson died on January 14, 2008. Shortly after Daniel's death, his cousin, Stanley Cohen, filed an application to probate a will dated November 16, 2007. The will left Daniel's estate to his five children but specifically excluded Stacy from any devise or bequest. The record indicates that prior to his death, Daniel and Stacy were involved in divorce proceedings. Stacy contested the 2007 will and sought to have a 2002 will admitted to probate.

The probate court appointed Jack Efron to serve as temporary administrator pending the will contest. The probate court's order expressly gave Efron the "power to negotiate and settle all estate claims." A few months after his appointment, Efron filed an application seeking authority to transfer a lien to Stanley Cohen. The lien secured a promissory note which Efron believed Cohen purchased in November of 2005 from Main Avenue Enterprises, Inc., a company owned by Daniel. Cohen purchased the note through a partnership called SCSSC Investments. After a hearing on September 23, 2008, the probate court signed an order directing Efron to execute the transfer of lien. This is the first order appealed by Stacy.

On November 7, 2008, Efron filed an application for payment of administrator's/attorney's fees, requesting $36,720.00, and stating $7,000.00 in additional fees were anticipated in order to close the Estate. The application also noted that Stacy had filed a notice of appeal with regard to the September 23, 2008 order, and stated that Efron intended to engage the services of an appellate attorney to represent the estate at an anticipated fee of $7,500.00 to $10,000.00. After a hearing on

November 20, 2008, the probate court signed an order directing Efron to be paid $35,000.00 out of the estate's funds. This is the second order appealed by Stacy.

On November 17, 2008, Efron filed a separate application for authority to employ an appellate attorney to represent the estate in the appeal of the September 23, 2008 order. The same day, the probate court signed an order approving the employment. On November 19, 2008, Stacy filed an objection to the retention of appellate counsel, asserting she did not receive proper notice and that Cohen should pay for the defense of the order on appeal. At the conclusion of a hearing held on January 9, 2009, the probate court reserved judgment on the payment of attorney's fees to the appellate counsel, but did not withdraw its order authorizing the employment. This is the third order appealed by Stacy.

### TRANSFER OF LIEN

Stacy initially challenges the trial court's order directing Efron to execute the transfer of lien on the basis that the trial court was without authority to authorize the distribution of assets from the estate. Stacy cites law supporting the proposition that a temporary administrator is only authorized to act as a conservator of the estate, not a distributor.

Section 234(a)(4) of the Texas Probate Code ("Code") authorizes a personal representative of an estate to file a written application with the court seeking authority to make compromises and settlements in relation to property or claims in dispute or litigation. TEX. PROB. CODE ANN. § 234(a)(4) (Vernon 2003). The Code defines the term "personal representative" as including a temporary administrator. TEX. PROB. CODE ANN. § 3(aa) (Vernon Supp. 2008). A temporary administrator's ability to file an application under § 234(a)(4) and seek an order authorizing specific actions is consistent with § 133 of the Code, which states that temporary administrators have such

rights and powers "as are specifically expressed in the order of the court appointing them, and as may be expressed in subsequent orders of the court." TEX. PROB. CODE ANN. § 133 (Vernon 2003). An order under § 234(a)(4) would be a right or power expressed in a subsequent order of the court. *Id*.

At the hearing on Efron's application, Efron stated that evidence was presented to him that Cohen purchased a note in November of 2005 that was payable to Main Avenue Enterprises, Inc., a company owned by Daniel and of which Daniel was president. Because the ownership of the note was in dispute, Efron properly filed an application under § 234 seeking to compromise or settle the dispute. TEX. PROB. CODE ANN. § 234(a)(4) (Vernon 2003); *Hill v. Bartlette*, 181 S.W.3d 541, 549-50 (Tex. App.—Texarkana 2005, no pet.) (noting temporary administrator has authority to file an application to settle a lawsuit under section 234(a)(4)); *Wilder v. Mossler*, 583 S.W.2d 664, 666-67 (Tex. Civ. App.—Houston [1st Dist.] 1979, no writ) (noting temporary administrator may compromise claim in dispute when matter is properly presented to and approved by the probate court). In fact, Efron stated on the record that the reason he filed the application was "to prevent any litigation from being filed by Mr. Cohen in an effort to prevent hemorrhaging of expense."

In her brief, Stacy contends that the proper procedure would have been for Cohen to file a claim under § 298 of the Code. Initially, we note that § 234 expressly authorizes the procedural approach taken by Efron. In addition, a claimant is only required to present a liquidated claim for money under § 298. *Cross v. Old Rep. Sur. Co.*, 983 S.W.2d 771, 774 (Tex. App.—San Antonio 1998, pet. denied); *Wilder*, 583 S.W.2d at 667. To establish an unliquidated claim against an estate, a claimant need not present his claim before filing suit against the administrator. *Cross*, 983 S.W.2d at 774. For purposes of probate claims procedures, a claim is liquidated if liability is settled, rather than contingent, and damages are certain, rather than indeterminate. *Id*. at 775. In this case, the

ownership of the note in question was not settled; therefore, the claim was not a liquidated claim for money that Cohen was required to present under § 298. *See Walton v. First Nat'l Bank of Trenton*, 956 S.W.2d 647, 651 (Tex. App.—Texarkana 1997, pet. denied) (noting claims for title to or possession of property need not be presented to administrator before filing a suit for those claims); *Connelly v. Paul*, 731 S.W.2d 657, 660 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.) (noting claim for title to or possession of property need not be presented to and rejected by administrator); *Lusk v. Mintz*, 625 S.W.2d 774, 776 (Tex. App.—Houston [14th Dist.] 1981, no writ) (same) (quoting Furse, *Claims Practice In Probate Matters*, 34 TEX. B.J. 667 (1971)); *see also Wilder*, 583 S.W.2d at 667 (asserting "Section 234 does not limit the claims which a temporary administrator may compromise to those pending in probate court.").

Finally, Stacy contends that the evidence did not support the probate court's finding that the note was purchased by and transferred to Cohen. Stacy relies on the fact that the transfer of lien was not delivered to Cohen before Daniel's death, and Cohen failed to prove that he was in possession of the original note.

A note may be transferred even if it is not endorsed by the transferee. *Leavings v. Mills*, 175 S.W.3d 301, 309 (Tex. App.—Houston [1st Dist.] 2004, no pet.). A transferee may establish its ownership of a note by proving the transaction through which the note was acquired. *Id.*; *Fed. Finan. Co. v. Delgado*, 1 S.W.3d 181, 186 (Tex. App.—Corpus Christi 1999, no pet.).

In this case, the evidence established Cohen purchased the note from Daniel for the exact amount of the payments that remained owing. Testimony regarding the two checks used to pay the purchase price was offered into evidence. Although one check made reference to a loan, the other check referred to payment of the balance of the purchase price for the note. Evidence also was

introduced that Daniel signed the transfer of lien document, transferring the lien securing the note to Cohen's partnership; however, Daniel retained the document because it needed to be notarized. Furthermore, the evidence included a letter to a title company, acknowledging that the lien had been transferred, and a letter to the makers of the note stating the note was transferred, sold, assigned, and conveyed to Cohen's partnership. Finally, evidence was presented that Daniel forwarded the December 2005 note payment to Cohen because it was erroneously paid to him and that all payments since that date have been made to Cohen's partnership. Accordingly, the evidence is sufficient to support the probate court's finding that Cohen's partnership owned the note and the lien securing it.

## TEMPORARY ADMINISTRATOR'S ATTORNEY'S FEES

Stacy asserts that the probate court erred in ordering the payment to Efron of $35,000.00 because: (1) the evidence did not support a finding that the attorney's fees were reasonable and necessary; and (2) the recoverable fees were not segregated from the unrecoverable fees.

Although Efron clearly was permitted to recover both for his administrative work and for his legal work, *see* TEX. PROB. CODE ANN. § 242 (Vernon 2003); *Henderson v. Viesca*, 922 S.W.2d 553, 558 (Tex. App.—San Antonio 1996, writ denied), Efron was required to "separately identify the services he performed as temporary administrator and the services he performed as attorney for the estate." *In re Estate of Stanton*, 202 S.W.3d 205, 209-10 (Tex. App.—Tyler 2005, pet. denied). At the hearing on Efron's application for payment, Stacy's attorney objected to Efron's failure to segregate his bill, noting that the bill contained charges for "a lot of administrative work" that could have been done by a non-attorney such as taking a truck to be appraised and calling to determine if any activity had occurred on the sale of a house. In response, the probate court acknowledged that

Efron had the obligation to segregate the fees. *Cf. Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313-14 (Tex. 2006) (noting claimant has obligation to segregate recoverable from unrecoverable fees).

In addressing the need to segregate recoverable fees in *Tony Gullo Motors I, L.P. v. Chapa*, the Texas Supreme Court commented on the type of evidence necessary to support a proper segregation. 212 S.W.3d at 314. The Court noted that evidence regarding the segregation was necessary to enable a court of appeals to apply standard factual and legal sufficiency review to the jury's verdict based on that evidence. *Id*. Similarly, in this case, Efron was required to present evidence of the manner in which his bill should be segregated between legal and administrative work. Although the probate court ultimately reduced the amount of the fee awarded by $1,720.00, no evidence was presented to enable us to determine whether the award was based on a proper segregation of the fees. As a result, we reverse the trial court's order and remand the cause for reconsideration of the amount of fees that should be awarded. *See In re Estate of Stanton*, 202 S.W.3d at 210 (noting probate court properly denied application when fees were not segregated but stated that application could be refiled).

Stacy also contends that Efron was not entitled to recover attorney's fees for filing the application regarding the transfer of lien because it was in violation of his fiduciary duties. Because § 234(a)(4) authorized the application filed by Efron, we disagree that Efron was not entitled to recover fees for those services.

### APPELLATE COUNSEL

The final order about which Stacy complains is the probate court's order authorizing the employment of appellate counsel. On November 17, 2008, Efron filed an application requesting

authority to employ appellate counsel to represent the Estate in Stacy's appeal of the order directing Efron to execute the transfer of lien. Efron attached a copy of a proposed engagement letter to the application. The engagement letter required a retainer of $2,500.00 and set an hourly rate of $175.00. The engagement letter provided that the hourly rate would be billed against the retainer, and any attorneys' fees and costs in excess of the retainer would be billed on a monthly basis. The trial court signed an order the same day the application was filed authorizing Efron to employ appellate counsel upon the terms and conditions set forth in the proposed engagement letter.

On November 18, 2008, Stacy filed an objection to the application to retain counsel and motion for reconsideration. Stacy noted that the probate court signed the order without notice or a hearing. Stacy further argued that Cohen should bear the costs of the appeal because Cohen, and not the Estate, would benefit from the order being affirmed.

On January 9, 2009, the probate court conducted a hearing on Stacy's motion to reconsider. At the hearing, the probate court asked the attorneys if he could "wait and see what happens [on appeal] and then decide how the costs [would be paid]." Both Efron and Stacy's attorney reassured the probate judge that he could wait. Stacy's attorney stated that if the probate court decided to wait, the probate court would need to set aside the prior order. Stacy's attorney again argued that the appellate expense should be Cohen's responsibility and should not be borne by the Estate. The probate court stated that it would reserve judgment on the payment of the appellate attorneys' fees pending the disposition of the appeal. In response to whether the probate court intended to set aside the prior order, Efron stated that he did not want the order approving the appellate attorney's employment to be set aside but would agree that no payments would be made until disposition of the

appeal "for the Court to revisit that issue." The probate court concluded that the order would reserve judgment on the payment of appellate attorneys' fees pending the disposition of the appeal.

On January 13, 2009, the probate court signed an order granting the motion for reconsideration. Although the order that was presented stated that the November 17, 2008 order was set aside, the probate court revised the order to provide that the November 17, 2008 order "stands." The order further stated, "The Court reserves, however, the right to reconsider the payment of attorneys fees incurred in connection with this appeal at the conclusion of the case."

The first question that arises is whether the order is appealable given that the trial court reserved judgment on payment. Although the order completely and finally disposes of the issue of whether the Estate could retain appellate counsel, this court recently rejected an argument that a probate court's order authorizing employment of counsel was appealable, concluding the ruling was "more like a prelude than a finale." *In re Guardianship of Glasser*, No. 04-07-00559-CV, 2009 WL 763351, at *2 (Tex. App.—San Antonio Jan. 30, 2009, no pet.), Similar to *Glasser*, the parties understood at the end of the January 9, 2009 hearing that the fee award was subject to a final hearing. *See id.*, at *3. Accordingly, we conclude that the January 13, 2009 order is "more like a prelude than a finale," and we dismiss the appeal of that order for lack of jurisdiction.

## CONCLUSION

The order being appealed in appeal number 04-08-00782-CV is affirmed. The order being appealed in appeal number 04-08-00929 is reversed. Appeal number 04-09-00092-CV is dismissed for lack of jurisdiction. The cause is remanded to the probate court for further proceedings.

Catherine Stone, Chief Justice